CODER v. McPHERSON.

In re CODER.

(Circuit Court of Appeals, Eighth Circuit. April 3, 1907.)

Nos. 2,453,·66.

1. BANKRUPTCY—INVOLUNTARY PROCEEDINGS—GROUNDS—PREFERENCE — TRANSFER OF PROPERTY.

A debtor stated to his creditor on December 24, 1903, that his property was worth $246,750, and that he owed only $36,000. On May 2, 1904, he made a mortgage on a part of his property for $98,503.32 to another creditor. On June 13, 1904, he made another statement to his creditor that his property was worth $254,740, and that he owed $195,400, of which $147,500 was secured by mortgages upon his real estate. Thereupon, the creditor to secure its claim for $22,000, took from him three mortgages which together covered substantially all the debtor's unexempt property except a few hogs and horses, including his tools, machinery, and crops, and the debtor, who was then insolvent, thereby gave a preference under section 60a of the bankruptcy law, Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]. Held, the creditor had reasonable cause to believe when it took the mortgages that it was intended thereby to give a preference.

2. NOTICE—CONSTRUCTIVE NOTICE—FACTS PUTTING ON INQUIRY.

Notice of facts which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Notice, §§ 4, 6.]

(Syllabus by the Court.)

Appeal from the District Court of the United States for the Southern District of Iowa.

On Petition for Review.

Myron L. Learned (John L. Kennedy and George W. Paine, on the brief), for Coder.

T. J. Mahoney (John N. Baldwin and George S. Wright, on the brief), for McPherson.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. On June 6, 1904, Alexander Armstrong who was engaged principally in farming, made a note for $22,000, payable to G. W. Wattles, who was the president of the Union National Bank of Omaha. On June 13, 1904, Armstrong gave to Wattles three mortgages—one on 2,440 acres of land in Carroll county, Iowa, one on 616½ acres of land in Monona county, Iowa, and a chattel mortgage on his crops, farm implements, and machinery—to secure the payment of this note. At the same time, and for the same purpose, he made an assignment of his claims against one of his sons which amounted to $27,000, but which were probably of little value. Wattles took and held this note and these securities for the bank. On July 27, 1904, Armstrong filed a voluntary petition in bankruptcy and was subsequently adjudged a bankrupt. The consideration of the note for $22,000 was an indebtedness for about that amount which Armstrong owed to the bank upon his promissory notes which were not then due. About July 15, 1904, Wattles indorsed and delivered

this note for $22,000 to Thomas B. McPherson, and in October of that year McPherson presented a claim upon this note to the referee in bankruptcy and asked that the mortgages which secured it be sustained and enforced and that his claim be paid in full out of the proceeds of the mortgaged property in preference to those of unsecured creditors. The court below rendered a decree to that effect which the trustee challenges here by an appeal and by a petition to revise. As the question at issue involves a consideration of the facts disclosed by the evidence, the case will be considered upon the appeal and the petition to revise is dismissed.

After McPherson had presented his claim, he turned the note back to the bank in the summer or fall of 1905, and counsel concede that he stood in the shoes of that corporation, so that the only question remaining to be determined in this case is, did the bank have reasonable cause to believe when the mortgages were taken for its benefit on June 13, 1904, that it was intended thereby to give it a preference under section 60b of the bankruptcy law? Act July 1, 1898, 30 Stat. c. 541, p. 562 [U. S. Comp. St. 1901, p. 3445]; Act Feb. 5, 1903, 32 Stat. c. 487, § 13, p. 799 [U. S. Comp. St. Supp. 1905, p. 689].

Armstrong was the owner of the property described in the three mortgages, of some horses and hogs and of a homestead upon which he lived in the town of Glidden in Carroll county, Iowa. He was reputed to be one of the wealthiest men in his county, and, prior to May, 1904, his credit was unquestioned. Wattles had known him for more than 20 years, but had not been so intimately acquainted with him during the 12 years just preceding 1904 as he had been for eight years before that time. The bank had purchased in the year 1903 one of Armstrong's notes for about $5,000, and when, in December of that year, this note became due, Armstrong went to the bank and sought to renew it or to borrow money to pay it. Wattles asked him for a financial statement, and he made one in which he briefly described his property, estimated its value to be $246,750 and stated that he owed in all $36,000. In reliance upon this declaration the bank loaned him about $22,000 between December 23, 1903 and June 2, 1904. On May 2, 1904, Armstrong made a mortgage on 2,360 acres of his land in Carroll county to secure a debt of $98,503.-32 which he owed to William Arts, and this mortgage was recorded on May 3, 1904. During the last days of May or the first days of June of that year Wattles, and Thomas the cashier of the bank, became aware of this mortgage, and on June 6, 1904, Thomas asked Armstrong, who appeared at the bank, for security for the debt he owed to the bank, and he promised to give it and signed the note for $22,000. He neglected to give any security for about a week and then Thomas went to Glidden and obtained the three mortgages on June 13, 1904. At the time these mortgages were made Armstrong told Thomas that he did not owe Arts more than $70,000 and he made another financial statement in which he estimated the value of his property at $254,740, and the amount of his debts at $195,400, thereby showing the value of his property to be $59,340 more than the aggregate amount of his debts. According to this declaration

the amount of Armstrong's debts secured by mortgages was $147,500. This statement was in fact incorrect, and, if Thomas had investigated the value of the property, had examined the records of the mortgages upon the lands, and had inquired of the creditors named in the statement, he would have discovered that Armstrong was insolvent. He made no investigation or inquiry of any one but Armstrong. He testified that at this time his general understanding was that Armstrong owned a great deal of property and was heavily in debt with a good substantial margin, and Wattles testified that he understood and believed that Armstrong had a very large excess of assets over his liabilities, and that he was perfectly good for all he owed. Armstrong had substantially the same property, and owed substantially the same debts on June 13, 1904, that he had and owed on July 14, 1904, when he verified his schedules in bankruptcy, and, according to these schedules he owed about $290,000, and his property was worth only about $190,000. Upon this evidence the referee found that the bank and its officers "were in possession of such facts as would have put a reasonably prudent man upon inquiry which, if made, would have shown that the bankrupt was insolvent," and the court below reversed that finding, and concluded that Armstrong did not intend to give the bank a preference, and that neither the bank nor any of its officers had reasonable cause to believe that it was intended to give a preference by means of the mortgages.

The finding of the court upon this question of fact is presumptively correct, and it should be sustained unless some obvious error of law or serious mistake of fact intervened in the consideration of the case. The fact that the referee who saw and heard the witnesses and who enjoyed the best opportunity to judge of the credibility of their testimony came to a different conclusion detracts much, however, from the strength of this presumption. As Armstrong was insolvent when he gave the mortgages, their necessary effect was to enable one of his creditors to obtain a greater percentage of its debt than others of the same class, and they therefore created a preference under section 60a.

Nearly all of the property of this debtor was real estate. According to his statement made on June 13, 1904, he owed $195,400, and had real estate with a very limited amount of personal property estimated at only $254,740 with which to pay it. It is common knowledge that lands and other real estate are converted into money and applied to the payment of debts by those who owe 75 per cent. of their estimated value with much difficulty, and the nature of this property, the large amount of the indebtedness in proportion to the estimated value of the real estate, and the known difficulty of converting such property into money to pay debts, were obvious danger signals, which would not have failed to incite a creditor of ordinary prudence to searchingly investigate the solvency of the debtor.

Notice of facts which would incite a man of ordinary prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would disclose. The bank knew that Armstrong had stated that he owed only $36,000 in December, 1903,

that he had given a mortgage to Arts for $98,503.32 in May, 1904, and that he had stated on June 13, 1904, that he owed $147,500 secured by mortgages upon his lands and $47,900 that was unsecured. According to these two statements which he had given to the bank, his indebtedness had increased $159,400 between December 24, 1903, and June 13, 1904, and his assets less than $9,000. Two such statements would inevitably incite the ordinary creditor to inquire what had become of the $150,000 which the increased indebtedness indicated that the debtor had received and had not added to his property during these six months, and such an inquest would have developed the fact at once that Armstrong's statements were not true.

He had given a mortgage of $98,503.32 to Arts, and he had informed the bank that he owed Arts only $60,000 to $70,000. The alleged fact that a debtor had given a mortgage to one of his creditors for about $30,000 more than he owed him would have stimulated a creditor of reasonable prudence to an investigation of the actual amount of this debt, and a very simple inquiry addressed to the creditor would have developed the fact that Armstrong had not told the truth here. His statement of December 24, 1903, his mortgage to Arts, and his statement of June 13, 1904, demonstrated the fact that he had not truthfully set forth his indebtedness, and constituted full notice to this bank that his indebtedness was more than he had declared it to be. In the face of this knowledge, it took these mortgages which, in the aggregate, covered substantially all the unexempt property the debtor owned except a few hogs and horses. The real estate was already mortgaged according to Armstrong's second statement for $147,500, and it took mortgages upon this land and a chattel mortgage upon his tools, machinery, and crops. The inevitable effect of these incumbrances was to deprive the unsecured creditors of every means of collecting their debts; for these mortgages withdrew from attachment and execution substantially all the debtor's unexempt property. The legal presumption is that parties intend the inevitable effect of their acts, and, in view of all these facts, the conclusion is irresistibly borne in upon our minds that the court below committed a serious mistake of fact in the examination of this case, and that the bank on July 13, 1904, when it took these mortgages, had reasonable cause to believe that it was intended thereby to give it a preference over other creditors of the same class.

The decree below must accordingly be reversed, and the case must be remanded to the court below for further proceedings not inconsistent with the views expressed in this opinion; and it is so ordered.