## HUTTIG MFG. CO. v. EDWARDS.

## EDWARDS v. HUTTIG MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1908.)

### Nos. 2,565, 2,570.

1. BANKRUPTCY—INSOLVENCY—GUARANTIED DEBTS.

In a suit by a bankrupt's trustee to avoid a preference, a debt of a third person who was insolvent, which the bankrupt had guarantied, was properly considered as a debt of the bankrupt in determining his solvency at the time the alleged preference was given, and this though the guaranty was oral and within the Iowa statute of frauds, as such statute relates merely to the evidence required to prove the undertaking, and not to its validity.

2. SAME—CREDITORS—SURETIES OF BANKRUPT—"CREDITOR."

A surety or indorser for a bankrupt is a "creditor" within the meaning of the bankruptcy law.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1713–1726; vol. 8, pp. 7622–7623.]

3. SAME—INSOLVENCY—ESTOPPEL TO DENY.

Where defendant asserted and the bankrupt admitted the validity of defendant's demand against him at the time the bankrupt executed the mortgage to secure such demand, defendant was estopped to claim that the bankrupt was solvent because his property, all of which was covered by the mortgage, was sufficient to pay the bankrupt's other creditors.

4. SAME—KNOWLEDGE OF PREFERENCE—EVIDENCE.

In an action by a bankrupt's trustee to set aside a mortgage as an alleged preference. evidence held to sustain a finding that the mortgagee had reasonable cause to believe that a preference was intended, and that the bankrupt was insolvent at the time the mortgage was executed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 256.]

5. SAME—ADJUDICATION—COLLATERAL ATTACK.

A bankruptcy adjudication is entitled to the same verity as other judgments or decrees of courts of competent jurisdiction, and cannot be attacked collaterally in a suit by the trustee to avoid a preference on the ground that one of the three petitioners in the involuntary proceeding was not a creditor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, §§ 141–144.]

6. SAME—FUNDS OF BANKRUPTS—DEPOSIT—WITHDRAWAL.

Bankr. Act July 1, 1898, c. 541, § 61, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3446). requires courts of bankruptcy to designate banking institutions as depositories of funds of bankrupt estates and to require bonds for the safe-keeping and forthcoming thereof. Section 47a (3), 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), makes it the duty of a trustee to deposit all money received by him in one of the designated depositories, and general order 29 prescribes the method of withdrawal. Held, that such provisions are mandatory, and that in the absence of consent it was error for the District Court to direct a bankrupt's trustee to withdraw the proceeds of a sale of the bankrupt's property from such a designated depository, and deposit them in some national bank in the district, taking a time certificate of deposit bearing the highest current rate of interest.

Sanborn, C. J., dissenting.

Appeal from the District Court of the United States for the Southern District of Iowa.

W. E. Blake (Harold J. Wilson, on the brief), for Edwards, trustee.
John J. Seerley (E. M. Warner and C. C. Clark, on the brief), for Huttig Manufacturing Company.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. The principal question on these appeals is whether the Huttig Manufacturing Company received a voidable preference when it took a mortgage on all of the property of D. Winter, bankrupt. As the mortgage was taken within the prohibited period of four months we proceed to inquire whether Winter was then insolvent, and if so, whether the manufacturing company or its agents acting therein had reasonable cause to believe a preference was intended. The trustee says he was insolvent because, first, he was a member of the firm of E. D. Winter & Co., also adjudged bankrupt, and the addition of D. Winter's debts and assets to those of the firm confessedly exhibited a condition of hopeless insolvency; and second, if D. Winter was not a member of the firm his debts exceeded the fair valuation of his property. We are of opinion the second contention is well taken, and therefore need not discuss the first. D. Winter's property consisted exclusively of real estate. His indebtedness arose from lending his credit to his son, E. D. Winter, who conducted the business of E. D. Winter & Co., and from holding himself out as a partner, though he may not have been one in fact. There are some expressions in the testimony, mostly if not wholly hearsay, that the real estate of D. Winter, including his homestead, was estimated to be worth from $18,000 to $20,000. The assessed value of all excepting the homestead was $16,000, of the homestead $1,200. The value fixed by sworn appraisers appointed in the bankruptcy proceedings was $15,150, with $3,000 additional for the homestead. All that the trustee could obtain for the property exclusive of the homestead was $12,245.50. The proceeds were brought into court to abide the result of this litigation, and they were insufficient to pay the mortgage claim of the manufacturing company. When the mortgage was given D. Winter owed the manufacturing company $13,391.73, August Carstens $2,000, and the Merchants' National Bank of Burlington, Iowa, $2,700, a total of $18,091.73. He also owed the bank an additional $5,500 on two notes, but they were dated after the mortgage in question, and it was not shown they were renewals of prior notes or when the indebtedness originated. It is contended by the manufacturing company that the $13,391.73 for which it took the mortgage was not D. Winter's debt, and should not be considered in determining his solvency or insolvency. It was for goods sold by the manufacturing company to E. D. Winter & Co., and it is admitted D. Winter guaranteed the debt before it was incurred. The trustee says the guaranty was by a writing in which D. Winter also held himself out as a member of the firm, while the manufacturing company contends the signature of D. Winter to the writing was a forgery by E. D. Winter, his son, and that the guaranty was an oral one. In either event we think the amount of the debt directly affected D. Winter's solvency. A surety or indorser for a bankrupt has been held to be a creditor within the meaning of the bankruptcy law (Kobusch v. Hand [C. C. A.] 156 Fed. 660; Swarts v. Siegel, 54 C. C. A.

399, 117 Fed. 13); and upon the same principle a guarantor liable upon a fixed, liquidated demand as this was, is a debtor to him who holds it, and his liability is to be counted in determining his financial status. That the guaranty may have been oral and therefore within the statute of frauds of Iowa where the transaction occurred is immaterial. The Iowa statute relates merely to the evidence or proof of the undertaking, and not to its validity. Berryhill v. Jones, 35 Iowa, 335; Merchant v. O'Rourke, 111 Iowa, 351, 82 N. W. 759. In the latter case it was said:

"The statute of frauds does not prohibit an oral contract nor make such an agreement illegal because certain formalities are not complied with, but relates only to the method by which proof may be made in an attempt to enforce it."

The manufacturing company asserted and D. Winter admitted the validity of the demand against him, and the former is not in position to say the latter was solvent because his property, all of which it took under its mortgage, was sufficient to pay his other creditors. If the mortgage held, the other creditors would get nothing, and the solvency of the debtor would seem quite unsubstantial.

There is another matter affecting the financial condition of D. Winter. Some letters were received in evidence to which his name was signed, and which stated he was a member of E. D. Winter & Co. and liable for their debts. One of these letters was to a mercantile agency which made it the basis of commercial reports upon the faith of which Welt & Reddelsheimer sold the firm goods amounting to $914.70. The genuineness of the signature to the letter was attacked, but there were received in evidence before the referee for purposes of comparison admitted writings of D. Winter, and his decision that D. Winter so held himself out as liable, affirmed as it was by the District Court, should not be disturbed. It is altogether probable that D. Winter owed much more, but the debts mentioned rendered him insolvent when he made the mortgage. We are also convinced he knew it. He had previously given his daughter all his household effects and jewels in order, as he said, "to avoid all trouble for her in the future." He was conscious of being deeply involved with his son who conducted the business of E. D. Winter & Co., and he included in the mortgage to the manufacturing company all of the property he had left. The necessary effect of the mortgage was to give the mortgagee a preference over other creditors.

The referee in bankruptcy and the District Court found the manufacturing company had reasonable grounds to believe a preference was intended. An attentive consideration of the evidence and the fair inferences to be drawn from the facts admitted or proved lead us to the conclusion the finding is adequately supported, and that no clear or palpable mistake of fact was made, and in so saying we lay aside all incompetent testimony appearing in the record. The known business connection between D. Winter and E. D. Winter & Co. or E. D. Winter, the latter's continued and persistent failure to meet his obligations, the steady growth of the indebtedness for 13 months, E. D. Winter's failure to pay attention to his maturing notes, the undeniable

alternative of a partnership or a forgery by E. D. Winter to uphold a desperate credit, the fact that D. Winter, if not a partner, had freely and extensively pledged his credit to various persons to assist his son, the careful abstinence of the officer and attorney of the company from making inquiries when they went to the home of D. Winter to get the mortgage, the fact that instead of taking security upon the firm property they took it upon all of the property of D. Winter not even excepting his homestead, and that the mortgage was withheld from the records, the excuse being a promise of E. D. Winter to make a payment when other proof from the same source showed that he was regarded as unreliable and his promises as worthless—all, with minor facts and circumstances, uphold the conclusion below. True, it is not enough that a creditor has merely some cause for suspicion. He must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency. But we think the representatives of the manufacturing company were in possession of such facts as required an inquiry which they consciously and intentionally avoided. Pittsburgh Plate Glass Co. v. Edwards, 78 C. C. A. 191, 148 Fed. 377; Coder v. McPherson, 82 C. C. A. 99, 152 Fed. 951.

The manufacturing company attacks the validity of the adjudication that D. Winter was a bankrupt upon the ground that one of the three petitioners in the involuntary proceeding was not a creditor, but since the attack was made in a proceeding by the trustee to annul a preference it is a collateral, not a direct, one. An adjudication of bankruptcy is entitled to the same verity and is no more to be impeached collaterally than other judgments or decrees of courts of competent jurisdiction. It cannot be assailed by the defendant in a suit by the trustee to recover or avoid a preference upon the ground that one of the petitioners was not in fact a creditor of the bankrupt. When the record shows jurisdiction the adjudication of bankruptcy is subject to impeachment only by a direct proceeding in a competent court. Michaels v. Post, 21 Wall. 398, 22 L. Ed. 520; Sloan v. Lewis, 22 Wall. 150, 22 L. Ed. 832.

The remaining matter necessary to be considered arises on the appeal of the trustee. The District Court directed him to withdraw the proceeds of the sale of D. Winter's property from the depository of funds in bankruptcy and to deposit them in some national bank in the district, taking a certificate of deposit, payable six months from date, and bearing the highest current rate of interest. The objection to this order is well made. Section 61 of the bankruptcy act (July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446]), makes it the duty of courts of bankruptcy to designate by order banking institutions as depositories of funds of bankrupt estates, and to require of them bonds for the safe-keeping and forthcoming thereof. It was from such a depository the court directed the funds to be taken. Section 47a (3) (30 Stat. 557 [U. S. Comp. St. 1901, p. 3438]) makes it the duty of a trustee to deposit all money received by him in one of the designated depositories, and general order 29 (32 C. C. A. xviii, 89 Fed. xii) prescribes the method of withdrawals. These provisions of the act and the general order are mandatory in form, and were designed to insure the safety of the funds rather than an increment by

way of interest while they were idle. The funds were those of litigants and the risk which always attends the making of profit should not be incurred unless the right is clear. Doubtless consent by all parties interested would justify a departure from the prescribed rule. Rev. St. § 5504 (U. S. Comp. St. 1901, p. 3710). But such consent was not obtained.

The decree of the District Court is reversed in respect of the direction to the trustee to withdraw the funds from the depository; in all other respects it is affirmed.

SANBORN, Circuit Judge (dissenting). I am unable to assent to the opinion and the conclusion of the majority in this case because in my opinion the competent evidence presented fails to prove that D. Winter was insolvent, or that the Huttig Manufacturing Company had reasonable cause to believe that he was insolvent when he gave the mortgage, and it seems to me that there is no substantial competent evidence that he or any other person with his knowledge or permission ever held him out to creditors who relied upon such holding as a member of the firm of E. D. Winter & Co.