## In re EVANS LUMBER CO.

(District Court. N. D. Georgia. February 11, 1910.)

### No. 2,531.

1. BANKRUPTCY (§ 166*)—CHATTEL MORTGAGES—VALIDITY.

When intervener began to sell lumber to the bankrupt, he required the personal indorsement of E. for $1,000, which was about the amount for which he expected to give the bankrupt credit. Within four months prior to the bankrupt's adjudication, intervener, at E's request, gave up such personal indorsement and took a mortgage on the bankrupt's machinery and a transfer of certain of its bills receivable. The mortgage was not recorded immediately, but without any arrangement between intervener and the bankrupt to keep it from the record. *Held*, that the mortgage was valid as between the parties and as to the bankrupt's trustee; intervener having no reasonable cause to believe the bankrupt to be insolvent when he took it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 250, 251; Dec. Dig. § 166.*]

2. BANKRUPTCY (§ 474*)—LIENS—CARING FOR PROPERTY—CONTRIBUTION BY LIENOR.

Where intervener had a valid chattel mortgage lien on certain of the bankrupt's machinery and a transfer of certain of its bills receivable to secure an indebtedness of $930.45, and was entitled to be paid from the proceeds of a sale of the machinery $380, he was properly charged $75 as a contribution toward the expense of caring for the property pending bankruptcy and before sale.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 474.*]

In the matter of the Evans Lumber Company, bankrupt. Intervention of H. T. Reynolds to recover certain mortgaged personalty. Decree for intervener.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The question made by the petition for review on the findings of the referee on claim of H. T. Reynolds as to his right to priority to mortgage on certain machinery and transfer to him as collateral three accounts.

Arthur Heyman, for intervener.

Hudson Moore, for creditors.

NEWMAN, District Judge. The report of the referee is as follows:

"A claim was filed on October 28, 1909, in Re Evans Lumber Company, bankrupt, by one H. T. Reynolds. The petition sets out that the said Evans Lumber Company is indebted to the said Reynolds in the sum of $930.45, less certain credits, and that said indebtedness to said Reynolds is secured by a mortgage on certain machinery, as set out in the petition. Petitioner claims that the mortgage created a lien in his favor, and that he was entitled to be paid the proceeds of said machinery, which is shown in the petition for confirmation of sale filed November 10, 1909, to be the sum of $380.

"In addition to this, there were three accounts transferred to petitioner to secure said mortgage, the proceeds of which are also claimed in the petition.

"The petition further shows (and it is borne out by the evidence) that Reynolds at first had received a note for $1,000 indorsed by James Evans individually, and that at the request of the said Evans this security was given up, and, it having been made to appear to the said Reynolds that the affairs of the Evans Lumber Company were in good condition, he surrendered the note to the said Evans, and took the mortgage, which is attached to the petition.

"The evidence shows that this mortgage was kept from the record, but the testimony shows that the said Reynolds did not keep the mortgage from record by any agreement with the said Evans, but retained the right to record his mortgage when he saw proper.

"The answer was filed by the attorneys representing the trustee on November 1, 1909. This answer denies that the intervener, Reynolds, was ignorant of the true condition of the affairs of the said Evans Lumber Company, and alleges that he should have known of the true condition of the said Evans Lumber Company; that the giving of the mortgage did not create a lien until the same was recorded; and it appears that the same was not recorded until the intervener had knowledge of the insolvent condition of the said bankrupt, Evans Lumber Company.

"Trustee's attorneys, further answering, say that the mortgage and transfer of said accounts was within four months prior to the adjudication of the Evans Lumber Company as a bankrupt; that the said mortgage was given to secure a pre-existing indebtedness, and was given and taken under such conditions and circumstances as of necessity put said Reynolds upon notice as to the true financial condition of the said Evans Lumber Company.

"The brief of intervener's counsel is very full, and meets with the approval of the referee. Under the law of Georgia (Code, § 2727), it is not necessary to record the mortgage as between the parties. The law is very full as to the trustee taking the place of the bankrupt concern. There have been no intervening liens filed in this case, and, as between the parties, it appears to the referee that the mortgage given in lieu of certain security to Reynolds, and accepted by him in good faith, as the evidence shows, should be held good. From the evidence the only point in this case is whether or not Reynolds, from his associations and dealings with the Evans Lumber Company, was put on notice, or had reasonable cause, to believe any bankrupt conditions existing at the time that he took the mortgage.

"It appears to the referee that this question has been fully decided in the case of Coder v. Arts, 152 Fed. 943 [82 C. C. A. 91, 15 L. R. A. (N. S.) 372], and Coder v. McPherson, 152 Fed. 951 [82 C. C. A. 99], and quoted by the referee in a former decision, which has just passed under the review of the judge of the District Court in the case of M. C. Vandiver.

"The evidence is convincing to the referee that Reynolds was not aware of the bankrupt condition of the affairs of the Evans Lumber Company at the time that he agreed with Evans to surrender the personal note of Evans, and accept a mortgage on certain machinery, as specified in his petition, which machinery now stands for $380, as sold by the trustee."

It appears from the opinion of the referee and the evidence in the record that the Evans Lumber Company was engaged in the lumber business, and at the time H. T. Reynolds began to sell them lumber and required the personal indorsement of James Evans, individually, for $1,000, which was about the amount he expected to give the bankrupt credit.

It further appears from the record in this case that, within four months prior to the adjudication of the Evans Lumber Company, H. T. Reynolds, at the request of Evans, gave up the personal indorsement and took the mortgage and transferred notes.

The only question in the case, and the one to determine, is whether or not Reynolds, at the time he took this security, had reasonable cause to believe the Evans Lumber Company to be insolvent. The referee says:

"The evidence is convincing that Reynolds was not aware of the bankrupt condition of the affairs of the Evans Lumber Company at the time that he agreed with Evans to surrender the personal note of Evans, and accept a mortgage on certain machinery as specified in his petition, which machinery now stands for $380, as sold by the trustee."

I think the evidence sustains the referee in this conclusion.

The referee further held that Reynolds should pay $75 toward the expenses of looking after and caring for the property in which he was interested when the bankruptcy was pending and before the sale.

I am not prepared to say that this amount is unreasonable. It is perfectly clear that he should pay his proportion of the rent and other expenses incident to the care of the property on which he had a mortgage. The referee finds that $75 is "the lowest possible figure" at which the expense can be figured.

The action of the referee is approved.