## FARMERS' STATE BANK v. FREEMAN.

### In re JONES BROS. & CO.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1918.)

No. 4907.

1. APPEAL AND ERROR ⊂⊃1008(1)—REVIEW—FINDINGS OF TRIAL COURT.

Findings by the trial judge, who heard the evidence and saw the witnesses when testifying, will not be disturbed, unless clearly against the weight of the evidence, or induced by a mistaken view of the law.

2. BANKRUPTCY ⊂⊃163—PREFERENCES—WHAT CONSTITUTES.

Where, within four months of adjudication, a bankrupt whose indebtedness to a bank was overdue, gave a bill of sale conveying certain prop-

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

erty to the bank's attorney, who transferred to the bankrupt funds lent by the bank on security of the bill of sale, and the bank thereupon applied to its indebtedness such funds, which were deposited to the credit of the bankrupt, the transaction must be deemed a scheme to prefer the bank, and the application of such moneys cannot be justified as a banking transaction.

3. BANKRUPTCY ⊜⟶303(3)—PREFERENCES—INSOLVENCY—EVIDENCE.
In a suit to set aside an alleged preferential payment to a bank, evidence *held* to show that at the time of the payment the corporate debtor, which was subsequently adjudicated bankrupt, was insolvent.

4. BANKRUPTCY ⊜⟶166(5)—PREFERENTIAL PAYMENT—KNOWLEDGE OF ATTORNEY.
Knowledge of an attorney, who acted in the transaction which culminated in a preferential payment to his client, a creditor of the bankrupt, is imputable to the client.

5. BANKRUPTCY ⊜⟶166(4)—PREFERENTIAL PAYMENT—KNOWLEDGE.
Under Bankruptcy Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (Comp. St. 1916, § 9644), declaring that, if a transfer, etc., shall operate as a preference, and the person receiving it or to be benefited thereby, or his agent, shall have reasonable cause to believe that the transfer would effect a preference, it shall be voidable, notice of facts which would invite a person of reasonable prudence to inquiry is notice of all the facts which a reasonably diligent inquiry would develop.

Appeal from the District Court of the United States for the Western District of Arkansas; F. A. Youmans, Judge.

Suit by F. F. Freeman, as trustee in bankruptcy of Jones Bros. & Co., a corporation, against the Farmers' State Bank and another. From decree for plaintiff, the named defendant appeals. Affirmed.

W. N. Ivie, of Rogers, Ark., for appellant.

L. H. McGill, of Bentonville, Ark., and E. H. Thomas, of Kansas City, Mo., for appellee.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. This is an appeal from a decree in favor of the appellee. The action was against the appellant and one E. M. Fowler to recover an alleged preferential payment made to the bank by the bankrupt within four months prior to its adjudication as a bankrupt. The material facts charged in the complaint are that on February 6, 1915, an involuntary petition in bankruptcy was filed against Jones Bros. & Co., a corporation, upon the ground of having made preferential payments while insolvent. Among the preferential payments alleged to have been made was that to the appellant for the recovery of which this action was instituted. The bankrupt filed an answer denying the insolvency and the acts of bankruptcy charged. Upon a hearing the court adjudicated the company a bankrupt, and the appellee was duly elected and qualified as trustee.

It was charged in the complaint: That on January 13, 1915, the bankrupt was indebted to the appellant bank in the sum of $3,196 and interest thereon, evidenced by its promissory note. The note had been overdue since October, 1914, and was unsecured. That on that

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

day the defendant, E. M. Fowler, Mr. Clark, the cashier of the appellant bank, and the president of the Jones Company agreed upon and carried out the following scheme: The bankrupt executed to E. M. Fowler a bill of sale, whereby it conveyed to him 8,000 gallons of apple juice, belonging to it, for the expressed consideration of $3,500. That the said Fowler, not being possessed of the money, borrowed it from the appellant, executing his note for said sum of money, and as security for the loan pledged the bill of sale executed to him by the bankrupt. That the bank gave Fowler credit on its books for that sum of money, and Fowler immediately thereafter gave his check on the bank to the bankrupt for the $3,500. The check was thereupon deposited by the bankrupt with the appellant, and that evening, after banking hours, the bank charged the bankrupt with the amount of the note. That Mr. Fowler was the attorney for the bank, as well as of the bankrupt at the time. That for a long time prior to this transaction the bankrupt had kept its account with the appellant bank, which showed that for a considerable time the bankrupt was overdrawn at the bank, and when it had balances they were for very small sums. That at the time this transaction took place the bankrupt was insolvent, which was known to the appellant, as well as Mr. Fowler, its attorney. That the application of the money thus deposited to the credit of the bankrupt was not made in good faith in the usual course of business, but for the purpose of enabling the appellant to secure an unlawful preference, in violation of the provisions of the Bankruptcy Act.

Defendants filed separate answers, denying that the bankrupt was insolvent at the time, and alleging, if it was insolvent, that neither of the defendants knew it or had reasonable cause to know it, that the transaction was made in good faith, and not for the purpose of obtaining thereby the apple juice as a security for the bankrupt's indebtedness to appellant, and that the payment was not an unlawful preference, but a set-off, as the bank had a right to make. The hearing was upon oral evidence, and the court found that the bankrupt, at the time this transaction took place, was insolvent, and that the transaction was in pursuance of an understanding between the officers and attorney of the bank and of the bankrupt, for the purpose of giving the bank a preference in the collection of its note, and rendered a decree against the bank for the amount claimed, but no decree was rendered against the defendant Fowler. From this decree the appellant prosecutes this appeal.

[1, 2] The findings of the trial judge, who heard the evidence and saw the witnesses, when testifying, will not be disturbed by the appellate court, unless it is clearly against the weight of the evidence, or was induced by a mistaken view of the law. A careful reading of the evidence convinces that the entire transaction was merely a scheme for the purpose of enabling the appellant bank to secure payment of its debt in full, and enable it to bring the transaction within the rule laid down in N. Y. County Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380. Mr. Fowler had no money of his own to lend; the bank advanced it to him; he loaned it to the bankrupt, taking as

security therefor the bill of sale of the apple juice; the check he gave to the bankrupt was on the appellant bank, and was deposited immediately by it with the bank; and on the same day, after banking hours, the note was charged by the bank to Jones Bros. & Co.

[3-5] But it is earnestly contended that the evidence does not justify the finding that Jones Bros. & Co. was insolvent at the time, within the meaning of the Bankruptcy Act, and, if it was, that the appellant or its attorney knew it, or had knowledge of facts sufficient to put it upon notice of the insolvency. The evidence establishes that the assets of the bankrupt at that time, at the most liberal estimate, did not exceed in value at a fair valuation, $104,229.41. The property was appraised by experienced appraisers, one of them the secretary of the bankrupt company, and whenever the records or bills, showing the cost of each article, could be found, they were accepted by the appraisers as the fair value of the property. The appraisements of the real estate and buildings were based upon the careful estimate of an experienced architect as to their actual value and cost of reproduction. It showed the values as follows: Springdale plant, $11,302.32; Centerton plant, $7,262.30; Rogers vinegar plant, $26,094.98; Rogers preserving plant, $5,955.91; the St. Joseph property, taking all the merchandise at actual value, if in perfect condition, $9,400; the merchandise at Rogers was found to be worth $2,100. The accounts due the bankrupt were mostly uncollectable, and, as the trustee testified, that although he had made extraordinary efforts to collect them, he has been able to collect but very little, as the debtors have no property subject to execution, and that at the outside they were worth not more than $1,000. The property in the state of Texas belonging to the bankrupt estate, as shown by the testimony of the manager, who had charge of it, was $33,712.46; but allowing therefor the value claimed for it by the bankrupt, $41,113.90, makes the full value of all the assets $104,229.41. The debts which have been proved against the estate, and are in process of proof, leaving out of consideration the disputed claims, amount to $118,941.28. The real value of the assets was considerably less; but, allowing the full value therefor, there was a deficiency of nearly $15,000.

On behalf of appellant it is claimed that the statements of the bankrupt's assets and liabilities, furnished it by the bankrupt, show that its assets exceed its liabilities by a very large amount. But these statements are of little value, as appears from the face of them. Great reliance was placed upon the statement of September 30, 1914, made by an auditing accountant, and which was furnished to the bank. This statement by the auditor was simply what the books showed. Of how little value this statement is, is shown by the fact that among the assets is listed $500,000 for good will. The real estate, buildings, and equipment appear on this statement as of the value of $249,468.43. Among the real estate was included some property in Texas, listed as of great value, which did not belong to the bankrupt, but for which they only held a lease, and it had been forfeited at the time the bankruptcy proceedings were instituted.

The state of the bankrupt's account with the bank, and the fact that

this note had been overdue for three months, would clearly indicate to any business man that the company was insolvent. Mr. Fowler, who was the attorney for the bank in this transaction, and also the attorney of the bankrupt, certainly knew of the company's insolvency, and his knowledge was the knowledge of the bank. Section 60b of the Bankruptcy Act. Notice of facts, which would incite a person of reasonable prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would develop. Coder v. McPherson, 152 Fed. 951, 82 C. C. A. 99; Huttig Mfg. Co. v. Edwards, 160 Fed. 619, 87 C. C. A. 521.

The findings made by the trial judge are clearly supported by the weight of the evidence, and there was no mistaken view of the law; therefore the decree is affirmed.