## In re STAR SPRING BED CO.

(Circuit Court of Appeals, Third Circuit.   April 19, 1920.)

No. 2482.

1. **Bankruptcy �kö 303(1)—Bankrupt presumed insolvent at close of day preceding filing of petition.**

In the absence of countervailing evidence, there is a presumption that a bankrupt was insolvent at the close of the day preceding that on which an involuntary petition was filed against it, followed by an adjudication.

2. **Bankruptcy ⊊165(4)—Substitution of accounts receivable as security in place of accommodation notes operates as preference.**

Where, at the close of the day preceding the filing of a petition in bankruptcy, bankrupt executed its note to a bank for the amount of accommodation notes given to it by third persons, which it had previously indorsed and discounted at the bank, taking up such notes and assigning accounts receivable as security for its own note, the transaction *held* to operate as a preference to the bank.

3. **Bankruptcy ⊊165(1)—Bank discounting notes payable to bankrupt on indorsement is creditor.**

A bank, which has discounted notes of third persons made payable to bankrupt and indorsed by it, is a general creditor of bankrupt as respects the question of preference by the bankrupt.

4. **Bankruptcy ⊊166(4)—Cause to believe debtor insolvent sufficient to render preference voidable.**

If the facts surrounding and attending the transfer of property by a bankrupt to a creditor were such as to cause a reasonably prudent man to believe that bankrupt was insolvent, or as to put such a person on inquiry, which would have disclosed insolvency, the transfer is voidable as a preference, under Bankruptcy Act, § 60b (Comp. St. § 9644).

5. **Bankruptcy ⊊166(3)—Transfer held voidable as preference, because of creditor's knowledge of insolvency.**

Where a bank, which had discounted notes payable to bankrupt on its indorsement, supposing them to be ordinary business paper, before their maturity was informed that they were accommodation notes, and that the makers were unwilling to leave them longer outstanding, and thereupon surrendered them, taking bankrupt's note, secured by an assignment of accounts receivable, the transaction *held* to be such as to charge the bank with notice of bankrupt's insolvency and to render the transfer of the accounts voidable as a preference.

6. **Bankruptcy ⊊298—Motion to expunge claim held not barred by laches.**

A delay of four months by a trustee after the filing of a claim before moving to expunge it, unless a preference was surrendered, *held* not such laches as to defeat his right, where no injury resulted to the creditor.

Appeal from the District Court of the United States for the District of New Jersey; J. Warren Davis, Judge.

⊊For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the matter of the Star Spring Bed Company, bankrupt. The Union National Bank of Newark, N. J., appeals from an order of the District Court. Affirmed.

For opinion below, see 257 Fed. 176.

Arthur F. Egner, of Newark, N. J., for appellant.

Nathan Bilder, of Newark, N. J., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. Star Spring Bed Company, on April 18, 1911, assigned certain of its accounts receivable to the Union National Bank of Newark, N. J., a creditor. On the following day an involuntary petition in bankruptcy, resulting on May 1, 1911, in adjudication, was filed against the Star Company. The claim of the bank was thereafter filed against the bankrupt estate. The trustee, by petition alleging that by the aforesaid assignment the bank had received a voidable preference, prayed that the claim be disallowed and expunged unless the alleged preference be surrendered. The referee, after hearing, found that the assignment did not operate as a preference, and that the bank did not have reasonable cause to believe that the assignment would effect a perference, and dismissed the petition. Upon review, the court below, arriving at contrary conclusions, reversed the order of the referee, and directed that the claim of the bank be expunged unless it should forthwith surrender its preference. 257 Fed. 176. The matter is here upon petition for review and appeal from the aforesaid order of the District Court.

The main facts appearing from the evidence touching the question of preference are that on April 18, 1911, the Star Company was indebted to the bank in the sum of $58,200. Of this amount $12,600 was evidenced by promissory notes of the Star Company, and the remainder, or $45,600, by numerous notes made by third persons to the order of that company and by it indorsed. The latter notes were discounted by the bank on the belief that they had been acquired by the Star Company for value and in the usual course of business, although no express representation to this effect was made. About 4 o'clock in the afternoon of April 18, 1911, one Silberberg, theretofore wholly unknown to the bank and its officers, called at the bank. What then transpired is best told in the words of the bank's cashier. He testified:

"Mr. Silberberg stated that he was a friend of Mr. Gutman"—secretary and treasurer of the Star Company—"and also counsel for the Star Spring Bed Company, and that they had consulted him; that there was a condition that we did not understand, did not suspect. He informed us that in the list of notes which we had taken from time to time, and discounted and placed to the credit of the Star Spring Bed Company—he stated that there were certain notes in that number which were not as they appeared on the face, as they appeared to us; they were not business notes, but accommodation notes, and that some of these makers of the notes were not quite satisfied to have those notes outstanding, and that they wanted them back. The result was that he informed us of the amount and the number of these notes, and he wanted to make an exchange; pay us for the notes, take the notes away, by paying us for them, and we to surrender the notes and accept his offer of value. Finally,

after the matter was discussed and talked over, we accepted his proposition, and we surrendered the notes and accepted the value that he was giving us in place. The value were accounts which they assigned to us, claiming that they were absolutely good value, and we accepted their word on that, and the transaction was finished that afternoon; we surrendering the notes that he requested and accepting from him the value he was giving us in place of it in the way of a list of assigned accounts."

To carry out the transaction, Silberberg delivered to the bank a demand note of the Star Company for $20,000, secured by an assignment of its accounts receivable to the amount of $28,000. The Star Company was credited with the amount of the note, and its check was given to the bank for the amount then due to it upon the notes desired to be withdrawn. Sixty-four notes, having a face value of $20,574.72, were thereupon delivered to Silberberg. The amount of the indebtedness of the Star Company to the bank was not substantially changed by the transaction.

Authority for the proceeding instituted by the trustee is found in section 57g of the Bankruptcy Act (Comp. St. § 9641), which provides, in substance, that the claims of creditors who have received preferences voidable under section 60, subd. "b" (section 9644), shall not be allowed unless such creditor shall surrender such preference. Section 60, subd. "b," makes voidable a transfer of property by a bankrupt within four months before the filing of a petition in bankruptcy, if at the time of the transfer the bankrupt be insolvent, the transfer then operate as a preference, and the person receiving it, or his agent acting therein, shall then have reasonable cause to believe that such transfer would effect a preference.

Accounts receivable are property, and as susceptible of preferential disposition as other property. Newport Bank v. Herkimer Bank, 225 U. S. 178, 184, 32 Sup. Ct. 633, 56 L. Ed. 1042. The transfer was made within four months before the filing of the petition in bankruptcy.

[1] The Star Company was insolvent on the 19th of April, 1911. This is settled by the order of adjudication upon a petition filed on that day. The transfer of the book accounts to the bank was consummated about 6 o'clock in the afternoon of the preceding day. While we are not forgetful of the general rule that no presumption of insolvency at a date prior to that of filing the petition in bankruptcy arises from the adjudication (In re Rome Planing Mill [D. C.] 96 Fed. 812), yet we think reason demands, and that this rule does not, when insolvency is shown on one day, forbid, in the absence of countervailing evidence, a presumption that such condition existed at the close of the preceding day. No evidence having been offered in this case to rebut that presumption, we must find, as did the referee and the District Court, that the Star Company was insolvent at the time of the assignment of its accounts receivable to the bank.

[2] The assignment of the accounts receivable operated as a preference, if thereby the estate of the Star Company was depleted (Newport Bank v. Herkimer Bank, 225 U. S. 178, 184–185, 32 Sup. Ct. 633, 56 L. Ed. 1042), and the effect of the enforcement of the transfer would be to enable the bank to obtain a greater percentage of its debt

out of the property of the insolvent than any other of its creditors of the same class (Bankruptcy Act, § 60a; Swarts v. Fourth Nat. Bank, 117 Fed. 1, 4, 54 C. C. A. 387). As the accounts receivable were property, the assignment thereof depleted the assets of the Star Company to the extent of the value of the accounts so assigned. Consequently, unless the bank delivered to the Star Company property of equal or, greater value, the result of the transaction in question was a depletion of the latter's assets. For the accounts received by it the bank surrendered promissory notes made by third persons to the order of the Star Company and by it indorsed. The bank gave up nothing else. It is not disputed, however, that the notes so surrendered were all made by third persons without receiving value, and for the purpose of lending their names to the Star Company as a means of enabling it to obtain credit. Such notes were not property in the hands of the Star Company, the accommodated party. The bank did not, by the return of the notes, restore in any degree the assets of the Star Company to the undepleted condition existing before the assignment of the accounts receivable.

[3] Prior to the transaction in question the bank was a general creditor of the Star Company, notwithstanding it could have looked to the makers of the accommodation paper for its payment, either primarily or for any deficiency in the payment thereof by the Star Company. Swarts v. Fourth Nat. Bank, 117 Fed. 1, 7, 54 C. C. A. 387. It is manifest that the enforcement of the assignment of the accounts receivable to the bank would enable it to obtain a greater percentage of its debt out of the property of the insolvent than any other of its creditors of the same class. The surrender of the notes by the bank, the purpose for which they were reacquired by the Star Company, and the effect of the reacquisition upon the accommodation makers, are facts wholly immaterial so far as this proceeding is concerned. It follows that the assignment of the accounts operated under the Bankruptcy Act as a preference to the bank.

[4, 5] The bank urges, however, that even though the Star Company was insolvent at the time of the transaction, and the assignment of the accounts operated as a preference, yet neither it nor its agents engaged in the transaction then had reasonable cause to believe that the transfer of the accounts would effect a preference. In support of this contention the president and the cashier of the bank, the agents through whom the transaction was consummated, testified that they then had neither knowledge nor belief that the Star Company was insolvent. Such evidence, however, is neither controlling, nor of much, if any, weight; for under section 60b of the Bankruptcy Act, if the facts surrounding and attending the transfer were such as to cause a reasonably prudent man to believe that the bankrupt was insolvent, or were such as to put such a person on inquiry touching the solvency of the debtor, and such an inquiry would have disclosed insolvency, the transfer is voidable. In re States Printing Co., 238 Fed. 775, 151 C. C. A. 625; Coder v. McPherson, 152 Fed. 951, 82 C. C. A. 99.

The notes withdrawn were 64 in number, were made by 29 different persons, and aggregated $20,574.22. The bank, prior to the transaction in question, neither knew nor suspected that the notes of third persons, indorsed by the Star Company and discounted by it at the bank, were other than business paper. That the Star Company knew the bank had been deceived appears from the above-quoted statement of Silberberg to the cashier. That the deception was deliberate is obvious from the notes withdrawn. They were not for such sums as ordinarily and usually appear on accommodation paper, but were for such amounts as to indicate business paper only, as, for example, $75.75, $95.37, $365.29, and $442.17. The notes were not due when withdrawn, but matured from time to time during the four months next following the transaction. Moreover, Silberberg made to the bank the disclosure that the makers of the notes were not satisfied to have them outstanding, but wanted them back. From any point of view this disclosure should have been startling. If true, it disclosed concerted action on the part of the makers of the accommodation notes to reacquire their notes long before maturity. Such an effort evinced knowledge or belief on the part of the makers of these notes that they would sustain financial loss if their notes remained longer outstanding. This in turn pointed to insolvency of the Star Company. If, on the other hand, the statements of Silberberg were untrue, and were but a mere excuse to enable the company to reacquire the notes, the bank should have realized that an attempt was then being made to deceive it further and for an undisclosed purpose.

More obvious indications of insolvency it would be difficult to conceive; but, if these facts would not alone give to the bank reasonable cause to believe that the Star Company was insolvent, they were more than sufficient to put it on inquiry. There was ample opportunity for inquiry, for the bank could have made such inquiry, not from its debtor only, but also from any one or more of the makers of the 64 accommodation notes. Under these circumstances we believe that a reasonably diligent inquiry would have uncovered the existing insolvency of the Star Company. It was the bank's duty under the law to make such inquiry, yet it accepted the assignment and completed the transaction without investigation. Notwithstanding its inaction, it is chargeable with such knowledge as the investigation would have disclosed. Lethargy under such circumstances is not rewarded by the law. Without more, we think the facts surrounding and attending the transfer of the accounts receivable were sufficient to establish on the part of the bank reasonable cause to believe that the transfer of the accounts receivable to it would effect a preference.

[6] Lastly, the bank contends that, even if the transfer was voidable, the trustee is barred by laches from questioning it. We think this contention untenable. The bank filed its proof of claim on April 30, 1912. The trustee filed his petition to have the claim expunged and disallowed within 4½ months thereafter. This is not a plenary action by the trustee to recover the amount of the preference, but is a proceeding to enforce section 57g of the Bankruptcy Act, and consequent-

ly could not have been instituted until after the bank had filed its claim. The notes surrendered by the bank had all matured before September, 1911. We do not find that the bank sustained any injury by the short delay of the trustee in filing its petition.

The order of the District Court must be affirmed.