## In re SAYED.

### Appeal of FIRST NAT. BANK OF BOYNE CITY.

(District Court, W. D. Michigan, S. D. September 16, 1910.)

1. BANKRUPTCY (§§ 160, 166*)—"PREFERENCE"—REQUISITES.

   In order to constitute a preference, the transfer must be made by the debtor while insolvent, and must be given with the intent on his part to give a preference, to wit, to pay one creditor. leaving others in danger of not being paid to the same extent, and the receiver must also believe that the debtor has such intent.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 249–258; Dec. Dig. §§ 160. 166.*

   For other definitions, see Words and Phrases, vol. 6, pp. 5498, 5499; vol. 8, p. 7759.]

2. BANKRUPTCY (§ 161*)—PREFERENCES—TIME.

   Where a bankrupt while solvent assigned a land contract to a bank in consideration of present and future advances to improve buildings on the land, and neither the contract nor the assignment were witnessed or acknowledged so as to be entitled to record. the transfer was "made" when the assignment was delivered to the bank and an advancement made on the faith thereof. and not when a new assignment to the bank's successor was executed and recorded.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 261–263; Dec. Dig. § 161.*]

3. BANKRUPTCY (§ 165*)—PREFERENCES—TRANSFER AS SECURITY FOR PRESENT LOAN.

   Under the rule that one who receives security in exchange for a present loan is not of the same class as an existing creditor of the borrower, security given for a present loan is not a preference, though the borrower is insolvent.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 259; Dec. Dig. § 165.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. BANKRUPTCY (§ 165*)—PREFERENCES—FUTURE ADVANCES.**

Where a bankrupt while solvent transferred a land contract to a bank to secure a present loan and future advances to a specified amount, each advancement, in effect, constituted a loan in exchange for a present security, and was not therefore a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 259; Dec. Dig. § 165.*]

**5. BANKRUPTCY (§ 184*)—PREFERENCES—LAND CONTRACT—FAILURE TO RECORD—RIGHTS OF CREDITORS.**

Under the Michigan law, a vendee's interest in land contract is for most purposes real estate and is so treated for purposes of recording, but creditors of the vendee have no interest in the question of recording, unless they become purchasers through an execution sale.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 184.*]

**6. BANKRUPTCY (§ 184*)—TRANSFER OF LAND CONTRACT—FAILURE TO RECORD—PREFERENCES.**

Since under the Michigan law neither a land contract nor an assignment thereof is "required or permitted to be recorded" in order to give it validity as against creditors of the apparent owner who have not become purchasers of such owner's alleged interest at an execution sale, though having a specific lien, the owner's trustee in bankruptcy representing creditors not having so purchased *held* not entitled to attack the validity of the transfer made more than four months before bankruptcy, and when the bankrupt was solvent, on the ground that it had not been recorded until after bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 184.*]

In the matter of bankruptcy proceedings of Alexander Sayed. On appeal of the First National Bank of Boyne City from a referee's order allowing a trustee's petition to vacate an assignment of a real estate contract. Referee's conclusion overruled, and petition denied.

W. H. Eastman, for Sayed.

G. A. Wolf, for trustee.

DENISON, District Judge. Alexander Sayed was a merchant in Boyne City. He purchased a store building, made a payment, and received a land contract in the usual form. On July 23, 1907, he had paid $700 out of the total purchase price of $2,200, and on that day he applied to the Boyne City State Bank for a loan or a line of credit of $1,200 for the stated purpose of improving the building. It was agreed that he should assign to the bank his interest in the real estate and in the land contract as security, and that the bank would advance him from time to time the amounts which he needed. Accordingly he indorsed upon the foot of his contract an assignment to the bank of his interest therein, and delivered the contract to the bank. Neither the original contract nor this assignment was witnessed or acknowledged so as to be entitled to record, and neither was, in fact, recorded. The bank advanced him $200 July 23, 1907, and various other sums so that the total January 1, 1908, was $800; and advanced $500 further on March 20, 1908. On February 3, 1908, the Boyne City State Bank was reorganized as the First National Bank, and took a general assignment of all assets and securities of the old bank and thereafter carried the loan. October 23, 1908, the First National Bank took from

Sayed a new assignment of the land contract, but this was only in aid of the assignment from the State to the National Bank, and did not create any new security. These existing loans, amounting to $1,300, were continued by renewals until the petition in bankruptcy was filed, December 24, 1909. The question is whether the assignment of this contract to the bank constituted a preference. The referee has reached the conclusion that such assignment was invalid because it was not recorded four months prior to the adjudication. The unquestioned fact seems to be that at the time the original assignment of the contract was made Sayed was solvent and continued to be for a year or more. He was insolvent when the petition was filed.

This assignment of the land contract in question was a "transfer," and I think the controlling question on this branch of the case must be whether this transfer was "made" when the paper was signed and delivered and took effect as the loans were made, or must be construed as not made until it was recorded. If the former, the transfer was not a preference, because it was not made while the debtor was insolvent, and there was no intent on either side to give or receive a preference, and it was for present and future advances. If the latter, it may be said, owing to the condition of things then existing, to be clearly a preference.

It is familiar history, in connection with the original bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), that the giving of a preference might come within the definition of acts of bankruptcy, and so might by reason of the time provision for recording found in connection with this definition be the basis of an adjudication; and yet that same preference could not be set aside by the trustee under section 60, because more than four months time had elapsed after the giving of the preference, and before the filing of the petition in bankruptcy. To meet this difficulty, the amendment of 1903 (Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1909, p. 1314]) to section 60b provided that, if the instrument of preferential transfer was one which by law was required or permitted to be recorded, the preference might be set aside if the bankruptcy petition was filed within four months after the day of recording. The Court of Appeals in this circuit has said that the purpose of this amendment was to bring the two sections into harmony, and that the provision concerning recording should receive the same construction in each section. In re Loeser v. Savings Bank, 148 Fed. 975, 78 C. C. A. 597, 18 L. R. A. (N. S.) 1233.

It is elementary to the definition of a forbidden preference, considered under any section and for any purpose, that it must have been made by the debtor "while insolvent." A solvent debtor cannot make a preference. It is therefore essential to the argument of the trustee that this transfer of the land contract to the bank was not "made" in 1907, when it was signed and delivered, nor in 1908, while the bank was making advances on the strength of it; and, indeed, that it had never been "made" down to the date of the adjudication, because it was not recorded until after adjudication. I cannot adopt this theory. This transfer was absolutely and completely made in July, 1907, and

all the incidents of security for the amount now due had attached as early as March, 1908, and during all this time Sayed was perfectly solvent, and had a right to give such a security and the bank had a right to receive it.

Carrying the same inquiry a step further, we find that the intent to give a preference—that is, to pay one creditor leaving other creditors in danger of not being paid as fully—must exist on the part of the giver of the security at the time it is given, and the receiver must then have cause to believe that the giver has such intent. Most certainly, in July, 1907, or March, 1908, Sayed had no such intent, and the bank cannot be charged with any notice of an intent which did not exist.

It is said that a construction of the act which leaves such an unrecorded transfer in legal effect after bankruptcy destroys the force of the act by providing easy means of avoiding the act. If this were true, it could not justify the judicial legislation which seems to me necessary in order to adopt the trustee's theory; but I do not think it is true. The instances where any one has a moral or ethical standing to attack a security given by a perfectly solvent debtor are rare, although they may sometimes occur, and such exceptional instances do not justify straining the statute. If such an instrument is withheld from record by agreement between the parties for the purpose of giving a fictitious credit, it then involves the element of actual fraud, and the question is quite different.

Some decisions are cited from other circuits, which, while they could be well distinguished on their facts from this case, yet doubtless indicate that the judges writing those opinions thought the statute should be construed as though it said that any transfer, the recording of which was required or permitted by law, should be a preference, if the transferrer was insolvent at the time the instrument was recorded; but, in the absence of any controlling decision, I cannot accept this view. The intent on the part of the transferrer must exist at the critical moment. If that moment be the instant of recording, how can it be said that the transferrer then has that intent, when he perhaps gave and delivered the instrument two years before, while he was perfectly solvent, and had continuously supposed that it was recorded, as might well be the case if the lack of recording had been from the carelessness of the secured creditor.

The trustee has another difficulty to overcome. A security is not a preference, unless it puts one creditor ahead of others of the same class, and one who receives security in exchange for a present loan is not one of the same class as an existing creditor. Hence a security given for a present loan is not a preference, no matter how insolvent the creditor may be. In this case, $200 of the amount was loaned at the time the assignment of the contract was given. There was an indefinite agreement to make further loans on the same security, and further loans were, from time to time, made, all while the debtor was solvent and all while there was no obligation under the bankrupt law for any recording. Each time that the bank was requested to and did advance an additional amount, it did it on the strength of the security which it already had received in contemplation of such future ad-

vances, and it seems to me that each such advance is, in substantial effect, a loan in exchange for present security. Each time by virtue of the transaction the bank contemporaneously received an additional interest in the security. In March, 1908, each fraction of the total existing loan had been paid over upon the faith of security received or attaching at the time of the advance. I do not think this situation is at all changed by the fact that the old bank transferred the loans and the security to the new bank, and that the new bank afterwards took a new assignment, somewhat more formal, but which did not change the rights of any one.

The trustee has still another difficulty. He must depend upon the theory that the assignment of this land contract was a transfer, the recording of which was required or permitted by law; that is, by the law of Michigan. In the form in which these papers stood they were not entitled to record, and any attempt at a record would have been a nullity. This is for the reason that neither the contract nor the assignment to the bank was witnessed or acknowledged. I doubt whether this informality is important, because the law must refer to instruments of a class capable of being recorded when they are in proper form, and it would be overtechnical to say that parties by omitting formalities in the execution of a transfer may make it valid in bankruptcy when it would otherwise be invalid; but the question is deeper than that. Under the laws of Michigan, the interest of the vendee in a land contract is for most purposes real estate, and is so treated for purposes of recording. The creditors, however, of the vendee have no interest in this question until they become purchasers through an execution sale. The ordinary creditor without specific lien, being that class of creditor represented by the trustee in bankruptcy, has no concern with the point. A land contract or the assignment of a land contract is not "required or permitted" to be recorded under the law of Michigan for the purpose of making it valid as against those who give credit to the apparent owner. True, it is in one sense "permitted" to be recorded; but there is no apparent reason why a creditor of Sayed should, acting through the trustee in bankruptcy, be permitted to set aside an unrecorded conveyance of real estate, when, except for the bankruptcy, the same creditor, even with a specific lien, could not defend against such conveyance nor attack it, so long as he remained a creditor nor until he became a purchaser. To decide this question involves a careful application of the recording laws of the different states where decisions have been made, and I think considering the other and decisive questions involved in this case, is unnecessary.

The amendments of June 25, 1910, make some of the matters discussed herein quite unimportant for the future.

I feel compelled to overrule the conclusion of the referee, and to direct that the trustee's petition to vacate the assignment be denied. All matters of costs and allowances will remain with the referee.