In re DONNELLY.

(District Court, N. D. Ohio, W. D. February 5, 1912.)

No. 1,534.

1. BANKRUPTCY (§ 58*)—"ACT OF BANKRUPTCY"—TRANSFER OF PROPERTY— INTENT TO PREFER.

October 21, 1902, a warranty deed was made to a bank which was intended to operate as a mortgage. August 7, 1907, the grantee executed a note and mortgage to the bank, which covered his full indebtedness to it at that time. The deed continued in possession of the bank, and both instruments were withheld from record by agreement of the parties. Later on differences having arisen as to the amount of the grantor's indebtedness to the bank, it was verbally agreed that the deed should be held by it to secure any balance in its favor. November 24, 1908, at which time the grantor was insolvent and within four months of the filing of a petition against him, the bank caused the deed to be recorded, and four days later it was agreed by the parties to treat

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

it as an absolute conveyance and credit given to the grantor on his existing obligations to the bank. During all of the above times the grantor remained in possession of the lands conveyed. *Held*, that as the deed was "required" to be recorded within the meaning of section 60a, Bankr. Act July 1, 1898, c. 541, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 (U. S. Comp. St. Supp. 1909, p. 1314), which provides that a person shall be deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition made a transfer of any of his property, the effect of which will enable any one creditor to obtain a greater percentage of his debt than others of the same class, and that the four-month period begins to run from the recording of the transfer if by law such recording is required, the recording of the deed constituted an act of bankruptcy under section 3a (2) of the act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), which provides that an act of bankruptcy shall consist of a person having transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditor over his other creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 72–79; Dec. Dig. § 58.*

For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

2. BANKRUPTCY (§ 57*)—"ACT OF BANKRUPTCY"—TRANSFER OF PROPERTY—INTENT TO HINDER, DELAY OR DEFRAUD.

*Held*, also, that, as the verbal agreement under which the deed was being held by the bank on the day of its record was ineffective, the grantor, by permitting it to remain in the bank's possession with power to use it as an effective muniment of title, when in fact it had only the naked legal title, was attempting a constructive fraud on his other creditors, and that the transaction constituted an act of bankruptcy under section 3a (1) of the act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), which provides that an act of bankruptcy shall consist of a person having transferred any part of his property with intent to hinder, delay, or defraud his creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 57.*]

In Bankruptcy. On petition to declare Michael Donnelly an involuntary bankrupt. Granted.

See, also, 188 Fed. 1001.

Doyle & Lewis, for bankrupt.

Jason A. Barber, Guy W. Kinney, J. R. Linthicum, and B. F. James, for petitioners.

KILLITS, District Judge. March 20, 1909, involuntary petitions in bankruptcy were filed against Michael Donnelly, with averments sufficient to give this court jurisdiction, alleging as acts of bankruptcy that on the 24th of November, 1908, with intent to prefer the Citizens' State Banking Company, one of his creditors, over his other creditors, and with the further intent and purpose to hinder, delay, and defraud his other creditors out of the just payment of their debts, he made two transfers of large portions of his property, first, by a warranty deed conveying about 420 acres of farm lands in Henry county, Ohio, for the expressed consideration of $25,000, and by a mortgage deed conveying 1,000 acres of farm lands in Henry county, Ohio, for the expressed consideration of $35,600, said mortgage deed

being made to J. D. Groll, cashier of said banking company and for the benefit of said banking company, and on the 9th day of December, 1908, with like intent to prefer the banking company and with like intent to hinder, delay, and defraud his creditors out of the just payment of their debts, he conveyed to said Groll for the said banking company, by mortgage deed, with the expressed consideration of $15,-000, 100 acres of land in Henry county, Ohio. The defendant answered, denying the allegations of the petition and demanding a trial by jury. Upon the impaneling of a jury the demand was withdrawn, and the case was tried to the court alone.

On the trial the privilege to examine the alleged bankrupt under paragraph "d" of section 3 was demanded in behalf of the petitioning creditors, and upon his refusal to submit to an examination, and to give testimony as to all matters tending to establish solvency or insolvency, the burden of establishing solvency was imposed upon him, as provided by law. The case of the petitioners, therefore, rested with the presumption of insolvency, and, the defendant failing to introduce testimony of any kind tending to rebut this presumption, the court is forced to treat the case as though insolvency on the earliest date laid in the petitions, November 24, 1908, were a fact. At that time Donnelly's affairs were very greatly involved with those of the Ohio-German Fire Insurance Company, of which corporation he was president, and because of his efforts to assist the insurance company out of its financial difficulties he was a debtor to the Citizens' State Banking Company for a very large sum of money, exceeding $100,000, the extent of which it was not material for this court to inquire into. Some of this indebtedness had existed for a long time.

The dates given in the petitions as the dates upon which acts of bankruptcy were committed were not the dates of execution of the several conveyances in question, but the dates of recording the same by the bank. October 21, 1902, Judge Donnelly became indebted to the bank in the sum of $75,000, $66,000 being for a certificate of deposit then delivered to him and $9,000 representing another consideration. Among other considerations for this indebtedness a deed by Donnelly and wife was executed and delivered to the bank, conveying 420 acres of land, for the expressed consideration of $25,000. There is no question but what this conveyance was intended by the parties to operate as a mortgage rather than as an absolute transfer of the title. It was withheld from record by agreement between Judge Donnelly and Groll, the cashier of the bank. Soon after this transaction, the certificate of deposit was returned, leaving but the $9,000 of indebtedness to stand. The deed remained unrecorded in the possession of the bank until August 7, 1907, when an adjustment of their transactions between Donnelly and the bank was had, and a note was made for $35,600, into which and entering into the computation of that amount was the balance of $9,000 and its interest remaining unpaid of the consideration of the deed of October, 1902. This note indebtedness of $35,600 was secured by the mortgage deed referred to above as having been with the warranty deed filed for record on November 24, 1908. The warranty deed in question con-

tinued in the possession of the bank, and the mortgage deed just referred to was withheld from record by verbal agreement between the parties. After the accomplishment of this transaction, it seems to the court apparent that the deed of 1902 no longer represented any consideration, and whatever rights the bank had acquired in the land attempted to be conveyed thereby were lost, and it was Judge Donnelly's right to have his title to the land re-established in himself.

Some time after August 7, 1907, in an attempt to adjust and secure to the bank differences arising through numerous and intricate transactions, it was agreed between Judge Donnelly and Groll for the bank that this deed should be held by the bank to secure it for whatever balances an auditing of these matters should discover to be in favor of the bank. The deed continued in the possession of the bank to effect the last-named purpose until some time in September, 1908, when a discussion was had between Groll, the cashier, and Donnelly, as to the advisability of recording it, Judge Donnelly informing the cashier that it was in his opinion as good without record as with, but telling Mr. Groll that the latter could record it if he insisted upon it, but he (Donnelly) would rather have Mr. Groll wait. It was recorded by Mr. Groll on the date above given through the suggestion of the State Bank Examiner. The mortgage deed for the thousand acres of land to secure the $35,600 note was held off record under substantially the same conditions and recorded for the same reasons.

Judge Donnelly during these transactions had made another note to the bank for more than $100,000, and on the 28th day of November, 1908, a verbal agreement was made between him and Groll, for the bank, that the deed of 1902 should thereafter be treated as a deed absolute, and that the land conveyed by it should be considered as of the value of $40,000, and that credit of that amount should be given to Judge Donnelly on his existing obligations to the bank. July 27, 1905, Judge Donnelly gave to the bank a note for $15,000 and a mortgage deed to secure the same on 100 acres of land, the mortgage being withheld from the records under circumstances similar to those recited above touching the other conveyances until the 9th of December, 1908. During all of these transactions, and continuing to the present time, Judge Donnelly was permitted to remain in possession of all the land described in these several conveyances and to enjoy the usufruct thereof, save that for the season of 1911, on application of creditors, by order of the court, in lieu of the appointment of a receiver, he secured by bond the amount agreed upon to represent the net use of these properties for the farming season of that year.

[1] In the case of Ragan v. Donovan (D. C.) 189 Fed. 138, involving transactions to which the same The Citizens' State Banking Company ,was a party, this court held that the record of a deed is "required" within the provisions of section 60a of the bankruptcy act, providing that a person shall be deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition made a transfer of his property, and that the period of four months within which a petition may be filed alleging the transfer as

an act of bankruptcy, if with the intent reprehended by the statute, begins to run from the recording of the transfer. We have no reason to doubt the correctness of the holding in that case and of the full application of the law as therein stated, if correct, to the situation here, providing the circumstances involved in this case as to either one of these transfers come within the characterization of section 3a (1) and (2) of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]). It is settled that section 3a and section 60, as amended by the act of 1903 (Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1909, p. 1314]), are to be construed in harmony. We need cite no other authority than Loeser v. Savings Bank & Trust Co., 148 Fed. 975, 78 C. C. A. 597, 18 L. R. A. (N. S.) 1233, a decision of our own Circuit Court of Appeals.

As far as the application to this case is concerned of the statement of the law which we attempted in Ragan v. Donovan, the distinction between that case and this arising upon the fact that in the former case the bankrupt was insolvent at the time the transfers were executed, whereas, in this case, the establishment of insolvency does not antedate the filing of the transfers for record, is of no consequence. The Ragan-Donovan Case was an action by a trustee, in which it was necessary to establish, not only the attempt of the bankrupt to prefer the banking company, but the fact that the banking company in receiving the transfers knew of the purpose of its insolvent debtor to prefer it, whereas here it is only necessary for the petitioning creditors to establish by the requisite degree of proof the intent of the alleged bankrupt to prefer. This distinction also avoids much of the authority which the case of In re Sayed (D. C.) 185 Fed. 962, would otherwise have.

It is sufficient for the decision of this case to consider only the facts concerning the deed of 1902, recorded November 24, 1908, or within four months of the filing of the petitions in bankruptcy. Nothing in the case can relieve Judge Donnelly of responsibility for the recording. The act was the fruit of an arrangement, to which he was a party, which permitted it to be done when Groll, for the bank, deemed it necessary for the better protection of the bank as a creditor, and the fact, therefore, has the effect of an affirmative action on the part of Judge Donnelly himself. Up to this time the particular indebtedness against which the deed, by the verbal arrangement referred to, was being held as security, was not in amount commensurate with the conceded value of the property involved. It is the necessary inference from Mr. Groll's testimony that this instrument during the intervening time from the entering into of that verbal arrangement some time in August, 1907, until the deed was recorded, stood for considerations varying in amount and character as the numerous transactions between Judge Donnelly and in behalf of the insurance company and the bank varied in amount and character.

The verbal arrangement referred to considered, first, certain items on the insurance company's passbook as credits against the bank for collections on mortgages which really belonged to the bank and de-

livered to Judge Donnelly for the insurance company against the note of August 7, 1907, to the amount of $19,000. How the indebtedness varied, above or below that amount against which this instrument was being held as security the testimony does not disclose, but it appears that four days after the recording, when again the manner in which the bank attempted to hold a claim under this instrument was changed, and when for the purpose of fixing a credit on Judge Donnelly's $105,000 obligation the property described in the deed was valued at $40,000, the indebtedness still subsisting against which the deed was being held as security under the first verbal agreement subsequent to August, 1907, was only $13,820.84, in consequence whereof Judge Donnelly on November 28, 1908, because of this deed, received a credit on his $105,000 obligation of $26,179.16, making up the agreed price of $40,000.

This situation we feel certain warrants the court in holding that the result of the attempt to consummate title in the bank to the property in question by the recording of November 24, 1908, was to effect a payment in full of all that particular indebtedness of Judge Donnelly to the bank against which this deed was being held prior to the new arrangement on the 28th of November, 1908. At any rate, only four days after the recording of the deed, the bank, through Groll, made a verbal agreement with Judge Donnelly whereby this deed as an absolute conveyance to the bank should operate to extinguish dollar for dollar all the indebtedness against which it had theretofore been held as security, and leave a surplus of considerably more than half the agreed value of the property to be applied on another indebtedness.

The effect, then, if this deed is allowed to work a conveyance to the bank, is to pay in full to his creditor one item of the indebtedness of an insolvent, and thus be a clear preference within the description of section 60a of the bankruptcy act, for it would be a case of one creditor, as to this item of debt, getting a full, and hence a greater, percentage of his debt than was possible to other creditors of the bank's class, such as the petitioning creditors; for, Judge Donnelly being insolvent, they could not hope for a like full percentage.

Assuming that this court's reasoning in Ragan v. Donovan, supra, upon the authorities therein cited is correct, and, as we feel compelled to do, reading section 60a in connection with section 3a2, the conclusion just reached determines the issue, and requires an adjudication of bankruptcy against the respondent.

[2] But there is another light in which the transaction on November 24, 1908, may be regarded, touching this deed, which seems to avoid the necessity of using the support of Ragan v. Donovan to a like determination of the issue. No one will insist that the verbal agreement under which this deed was being held by the bank on the day of its record was effective to extinguish the equitable interest of Judge Donnelly which he then had as against the bank in the real estate described in the instrument, such equitable interest being, in fact, the whole value of the property. The deed had long since served its office. It then effected nothing but to clothe the bank with the naked legal title. The whole interest was equitably in Judge

Donnelly, an interest which could not be extinguished by any jugglery of words orally uttered. Section 8620, General Code of Ohio, unmistakably made the verbal agreement of no effect for any purpose. Judge Donnelly himself, under that statute, could have avoided it. However, he entered into a continuing arrangement, not only that the instrument might serve this new purpose, but that it might be made more effective in the effort to delude his creditors by recording at any time at the option of his grantee. As we observed above, the situation continued his affirmative agency in the matter until the consummation contemplated as possible by the agreement, which the recording involved, and charged him with responsibility for completed action on the date of that fact. To attempt to make this deed effective for a purpose to which it could not be in law applied as against existing creditors of the grantor, such as these petitioning creditors then were, and to permit it to remain in the hands of the bank subject to the power of the bank to use it as if it were an effective muniment of title through its formal recording and as if Judge Donnelly had been legally divested of ownership of the property therein described was, it seems, very clearly, to attempt at least a constructive fraud upon his other creditors. Believing that his responsibility therefor should be charged as of the consummation of the agreement on the date of the recording, and imputing to him thereby an intent to effect just what such a cloud on his title would effect, at least, a hindrance or delay to his creditors through their representative, the potential trustee in bankruptcy, in the reduction of this item of property to possession that it might become available for distribution, which, we think, is a reasonable inference, we feel justified in holding this to be an act of bankruptcy within the purview of section 3a1 and as having been committed within four months prior to the filing of the petition.

So considering the transactions with reference to the warranty deed, and finding in them the commission of an act of bankruptcy within four months prior to the filing of the petitions, it is unnecessary to consider the transactions with reference to the mortgage deeds relied upon by the petitioning creditors, except to observe that, at any rate, each of them comes under the rule of Ragan v. Donovan, supra, wherefore, if that decision is right, each as a preference relates for date to the day of filing for record. Each would, therefore, be an act of bankruptcy.

A decree will be entered adjudging the respondent, Michael Donnelly, a bankrupt, with exceptions to the respondent. An order will also be entered referring this case to Fordyce Belford, Esq., referee in bankruptcy for Lucas county, Ohio.