In re SANDERSON.

HORSKINS v. SANDERSON.

(District Court, D. Vermont. December 21, 1906.)

1. BANKRUPTCY—ASSETS OF BANKRUPT—INTEREST IN REAL ESTATE—EVIDENCE.

Evidence held insufficient to justify a finding that a bankrupt had an interest in a farm, the title of which was in his father, which could be subjected to the payment of the bankrupt's debts.

2. SAME—PREFERENCES—PERSONS BENEFITED—SURETIES.

Bankr. Act 1898, c. 54, § 60, subd. B, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], declares that if a bankrupt shall have given a preference, and the person receiving it, or "to be benefited thereby," shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property, or its value, from such person. A bankrupt borrowed funds from certain foreign lenders, his father becoming surety on the notes given to secure the same, and later the bankrupt, while insolvent to the knowledge of his father and under his advice, used the proceeds of the bankrupt's business to pay such notes within four months before the bankruptcy proceedings were instituted. Held, that the bankrupt's father was a person "benefited" by such transaction within such section, and was therefore liable for the return of the money so paid.

F. C. Smith and Lee S. Tillotson, for petitioner.
C. G. Austin & Sons, for petitionee.

MARTIN, District Judge. The trustee, by petition, alleges in substance: That Lynn J. Sanderson was duly adjudged a bankrupt May 20, 1904, upon his creditors' petition. That thereafter the petitioner was elected trustee. That the petitionee is the father of the bankrupt and is the owner of a farm, consisting of 235 acres of land, situated on the "Gore Road," so called, in Franklin county. That the bankrupt carried on said farm for many years just preceding his bankruptcy, and increased its value, improved the buildings, and increased the amount of stock on said farm. That he had paid the taxes and inter-

149 F.—18

est on a mortgage that existed on said farm, which mortgage was executed by the petitionee, and had shipped the petitionee large quantities of hay. That said bankrupt made said improvements and payments with the understanding that he was to own an interest in said farm. That the bankrupt engaged in the creamery business about the 1st of January, 1902, under some arrangement with the petitionee. That said creamery business was dishonestly managed, whereby the products thereof were invested by the bankrupt in making said improvements, increasing the stock on the farm, and that within four months of the filing of the petition in bankruptcy the said bankrupt and the petitionee entered into a conspiracy to defraud the patrons of said creamery, who were also creditors of the bankrupt, and to fraudulently use the money received from the sales of the products of the creamery to make preferred payments to certain creditors who held the notes of the bankrupt, which notes were signed by the petitionee as surety, and by others to whom the petitionee had furnished collateral security for so signing said notes, and did, in pursuance of said conspiracy, make preferred payments thereon within four months preceding said proceedings in bankruptcy. That the said bankrupt and the petitionee collusively formulated a letter and mailed it to the patrons of the creamery for the purpose of prevailing upon said patrons to continue their patronage, and thus enable the bankrupt to accumulate more money with which to make payments to preferred creditors, which letter read as follows:

"Maplewood Creamery.

"Highgate Center, Vt., Aug. 25, 1903.

"I regret to say to you that on account of financial losses that I am compelled to suspend payment of my creditors for the time being. I have struggled against adverse circumstances for a long time, and paid a hundred cents on a dollar that I owed until I have become deeply involved, and am unable to meet my obligations as they become due. No one will regret the situation more than myself, for I am anxious to pay every honest dollar that I owe, and hope to do so if my creditors will give me an extension and forbear with me. I find myself in debt from $7,000 to $10,000, but I hope to be able in the future to pay all I owe, if I have my health and strength. If I can avoid the disgrace of bankruptcy and secure the confidence of my creditors, so that they will forbear payment with me, I feel confident that I shall be able to pay all in the future. I am advised that, in view of the circumstances, I cannot safely make payment to any of my creditors until it is ascertained what attitude they take in the premises. Shall be pleased to advise with you, or any of my creditors, in regard to the best method to pursue, and will be glad for your co-operation and advice in the premises.

"Very respectfully yours,                                L. J. Sanderson."

That the bankrupt testified before the referee in bankruptcy, and on this testimony, which is set out in the petition at some length, it is charged that the bankrupt and the petitionee were partners in said creamery business. That at the time of making said preferred payments the petitionee knew that his son, the bankrupt, was insolvent, and therein prays the court to appoint a receiver to take possession of said farm. That the bankrupt's interest in said farm be carved out for the benefit of the bankrupt's estate. That the petitionee account at length to the trustee of the bankrupt. That the petitionee be ordered to pay such sum or sums and to surrender any and all property that

shall be found due the petitioner, or to which he is equitably entitled, by some short day to be fixed by the court. That such orders be made as may be necessary to define and protect the interests of the respective parties in the real and personal property described in the petition, and for such other and further relief as to the court may seem meet. The answer, in effect, denies the material allegations of the petition. The matter was referred by my predecessor to Hon. H. C. Royce as special master. The special master heard the parties and such evidence as they chose to submit, and from his report it is found in substance that the said Lynn J. Sanderson was duly adjudged a bankrupt May 20, 1904, upon his creditors' petition; that thereafter the petitioner was duly elected trustee of said Lynn J. Sanderson's bankrupt estate; that the petitionee is the father of the bankrupt, and is and was the owner of real estate as alleged in said petition; that the bankrupt carried on said farm for many years just preceding his bankruptcy, and during that time the farm materially increased in value, and there was a large increase in the amount and value of the stock on said farm. He also finds that during that time the petitionee furnished large sums of money for its improvement; that the bankrupt made substantial improvements; that the bankrupt first took possession of the petitionee's farm in 1892, and down to the fall of 1898 he and his wife, being hard-working people, rendered valuable services upon said farm, and that their services together were fairly worth $450 a year over and above their living expenses; that during that time the bankrupt had the support of himself and wife, clothing, spending money, traveling expenses, doctor's bills, etc.; that he did no other business, except in connection with the creamery, than that of carrying on the petitionee's farm; that the accounts between the petitionee and the bankrupt were not well kept, but his conclusion is that, under all the circumstances, he is unable to find that the petitionee should account to the petitioner as trustee of Lynn J. Sanderson in bankruptcy for any sum or sums of money unless by reason of facts "hereinafter set forth." Those facts relate to payments to preferred creditors within the four months just preceding the bankruptcy. The referee carefully states many facts and circumstances connected with the transactions between the bankrupt and the petitionee that are not material to repeat here, in view of the fact that he concludes that there should be no accounting relating to the carrying on of the farm. He finds that the bankrupt expected that he would have some interest in the real estate of the petitionee, but that the petitionee did not so understand it.

In the opinion of the court, the facts set forth by the master are not sufficient to justify the court in ordering a receiver to take possession of said farm, or decree to the trustee in bankruptcy an ownership in any part or fractional part of the petitionee's real estate. It well enough appears that the bankrupt and the petitionee procured loans at the Eastern Townships Bank at Bedford, province of Quebec, Canada; that they procured one J. M. Hill, Jr., and other parties, to sign some of said notes as sureties, and the petitionee gave to those surety signers collateral security in some instances; that within four months of filing said petition in bankruptcy several of said notes were paid, and payments made upon other notes at said bank. It is claimed by the

petitionee that these preferred payments were made to creditors of the bankrupt who then were and are now domiciled in Canada, and thus without the jurisdiction of this court, and that any preferment that was made to them, although within the four months, cannot be reached in this proceeding. The master finds that the petitionee was a surety signer upon those notes; that he was benefited by those payments; that he is within the jurisdiction of this court; that before said payments were made it was talked over and understood between the bankrupt and the petitionee that said obligations should be paid, with the understanding between them that, the situs of the debts and the residence of the creditors being in Canada, payments made on said notes could not be recovered back in the event of bankruptcy proceedings; and that the petitionee then knew, or ought to have known, that said Lynn J. Sanderson was heavily in debt, in failing circumstances, and was, in fact, insolvent. He also finds that it was the intention of the bankrupt and the petitionee to prefer said creditors to whom such payments were made.

Section 60 of the national bankruptcy act, subdivision B (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), provides:

"If a bankrupt shall have given a preference and the person receiving it, or to be benefited thereby, or his agent acting thereunder, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property, or its value, from such person."

It is the opinion of the court that the words "such person" refer either to the person receiving such preference or the person who is benefited thereby. If the party receiving such preference is without the jurisdiction of this court, and the person benefited thereby is within the jurisdiction of the court, the trustee may proceed against the latter. It appears that the bankrupt collected money from the sale of the products of the creamery, and, instead of paying it to the patrons, to whom it belonged, he, through the advice of the petitionee, used it in paying obligations that he was owing to parties in Canada; that his father, the petitionee, who then knew that his son was insolvent, might be relieved from liability as a surety or indorser. Also, it is claimed that he paid the petitionee several hundred dollars on account.

It was claimed in argument, by counsel for the petitionee, that in a case where such payments are made to a foreign creditor there is no precedent for the recovery, as herein prayed for. See Landry v. Andrews, 6 Am. Bankr. Rep. 281, 48 Atl. 1036. Whether there is a federal court precedent or not, justice demands it, wherefore there should be a decree for the petitioner to recover of the petitionee all sums of money that were paid by the bankrupt, or paid by the petitionee out of the funds of the bankrupt, or out of funds received from the sale of the products of the creamery, within four months of filing said petition in bankruptcy, to the petitionee or upon the notes and obligations of the bankrupt whereby the petitionee was benefited by such payments, as above indicated.

The cause is recommitted to the master to more definitely report the amount of such payments and the interest thereon, that a decree may be made accordingly.