## In re CHRISTOPHER BAILEY & SON.

(District Court, E. D. Pennsylvania. February 6, 1909.)

1. BANKRUPTCY (§ 159*)—PREFERENCES—PAYMENT TO MAKER OF ACCOMMODATION NOTE.

An accommodation maker of a note to a bankrupt is a creditor, and a transfer of property to him to protect him against loss, made by the bankrupt when insolvent and within four months prior to the bankruptcy, constitutes a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 247; Dec. Dig. § 159.*]

2. BANKRUPTCY (§ 166*)—VOIDABLE PREFERENCE—REASONABLE CAUSE TO BELIEVE PREFERENCE WAS INTENDED.

Claimant was a customer of bankrupts from whom it bought twine for use in its rug factory, and owed them a note. At their request it renewed the note for a larger amount, the excess being for their accommodation and to cover future purchases which were made from time to time as required. Shortly before the bankruptcy, and when the bankrupts were insolvent, but before the maturity of the note, at their suggestion claimant took sufficient twine to cover the remaining excess, and the same was set apart, but remained on bankrupts' premises and came into possession of their trustee. It was not such twine as claimant had been using in its factory, and it did not desire the same for use. The bankrupt who suggested the transfer testified that he did so to protect claimant. *Held*, that the transaction was so unusual as to give claimant reasonable cause to believe that a preference was intended and to render it voidable, and that claimant could not recover the property from the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 256; Dec. Dig. § 166.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Bankruptcy.  On certificate of referee.

Sidney L. Krauss, for claimant.
James McMullan and Abraham M. Beitler, for trustee.

J. B. McPHERSON, District Judge.  The nature of this controversy will appear from the following report of the referee (Theo. M. Etting, Esq.):

"Reclamation proceedings have been brought by the Newfield Smyrna Rug Company with respect to 33 bales of twine now in the hands of the trustee, and which are claimed to be the property of the rug company in consequence of a sale made by the bankrupt on the 7th day of November, 1907.  This claim is resisted by the trustee on the ground that the alleged sale is in fraud of the rights of the other creditors of the bankrupts, and that title to said merchandise never passed from the bankrupts to the rug company.

"I find the facts to be as follows:  Christopher Bailey and Howard C. Bailey, trading as C. Bailey & Son, were adjudged bankrupts on November 21, 1907, upon their own petition.  They were, however, insolvent prior to November 7, 1907, the date of the alleged sale.  On September 9, 1907, Messrs. Bailey & Son held three notes of the Smyrna Rug Company in the following amounts, and which matured on the following dates:

| | |
|---|---:|
| September 24th | $1,103 78 |
| October 24th | 1,103 78 |
| December 29th | 1,010 54 |
| | $3,218 10 |

"On that date, Morrow, the president of the Newfield Smyrna Rug Company came to the bankrupts' place of business, and, at the suggestion of Christopher Bailey, Morrow gave Bailey & Son a three months' note for $4,994.10.  This was an extension of time to the rug company and an accommodation to C. Bailey & Son to the amount of $1,776.  Bailey said at the time that the rug company would be needing more twine, and it was understood that the difference was to be taken out in trade.

"Between September 9th and November 7th the rug company made purchases on account of this difference, as follows:

| | | |
|---|---|---:|
| September | 5th | $ 78 47 |
| " | 6th | 117 99 |
| " | 10th | 74 29 |
| " | 13th | 54 82 |
| October | 17th | 29 55 |
| Total | | $355 12 |

"The twine thus ordered was delivered to the rug company.

"On November 7, 1907, Morrow called at Bailey's store, and, at the suggestion of Christopher Bailey, 33 bales of twine of the value of $1,430.58 were selected, weighed off, checked, and marked in the name of the Newfield Smyrna Rug company, and left in the warehouse of Bailey & Son.  The price of the twine thus selected was $1,430.58, or $9.70 in excess of the amount then due on the note given by the rug company to Bailey & Son on September 9, 1907.

"Bailey & Son were insolvent prior to November 7, 1907.  The firm appears to have discovered this condition at least some three or four days previous, and had been then advised by their counsel to make no more payments.  The twine set apart as above was not removed by the rug company, but the company had permission to take it when it desired.  No removal was made prior to bankruptcy.  After bankruptcy demand was made upon the trustee for the delivery of the 33 bales of twine, but this demand was refused by the trustee, and reclamation proceedings followed.  The twine was not the kind of twine the rug company had previously been using.  The company had no present use for the twine, but intended, if possible, to resell it.  The transfer of the twine closed the account between the parties, although the note did not ma-

ture until December 9th. The rug company, by accepting the twine for which they had no present use, and which was not of the kind that they had been using, deprived itself of the right to take merchandise of the character which it had been in the habit of buying.

"During September and October, the entire amount of merchandise bought was $355.12, whereas on November 7th the amount of merchandise bought was $1,430.58. Christopher Bailey says that his suggestion to Morrow on November 7th was actuated by his desire to protect the rug company. Morrow says that he had no suspicion of Bailey & Son's financial condition; that he was not aware that the factory was closed down, as was the case, nor that Bailey & Son were bankrupt. The question is whether or not the rug company had reasonable cause to believe that a preference was intended. Neither actual knowledge nor belief is required to be shown, but only such circumstances as would lead an ordinarily prudent man to this conclusion. In a large majority of cases this depends upon whether the creditor knew, or ought to have known, that the debtor was insolvent. Morrow says that he did not know of the insolvency of the company, but if all things pointed to this, whatever his belief may be, it will not help him. In re Hines (D. C.) 16 Am. Bankr. Rep. 497, 144 Fed. 543.

"The whole transaction was so much out of the usual course of business that it appears to me to be incredible to suppose that the rug company had not reasonable cause to believe that a preference was intended. The rug company had become aware several months previous of the desire of Bailey & Son for money, and it is incredible to suppose that the sudden closing of the account in the manner in which it was closed on November 7th, at the suggestion of Bailey, could have failed to have led an ordinarily prudent person to the belief that Bailey & Son were at that time insolvent and desired to protect the rug company.

"The application for the delivery of the twine is therefore refused."

Upon the foregoing facts, with which I am fully in accord, there can, I think, be no doubt that the decision of the referee was right. That the rug company was a "creditor" of the bankrupt by reason of its being an accommodation maker, so far as a certain portion of the note for $4,994.10 is concerned, has been distinctly decided. In Swarts v. Siegel, 117 Fed. 13, 54 C. C. A. 399, the Court of Appeals of the Eighth Circuit held that:

"An indorser, an accommodation maker, or a surety on the obligation of a bankrupt is a creditor under the act of July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), and a payment on such an obligation by the principal debtor, while insolvent, to the innocent holder of the contract within four months before the filing of the petition for adjudication in bankruptcy, will constitute a preference which will debar the indorser, accommodation maker, or surety from the allowance of any claim in his favor against the estate of the bankrupt, unless the amount so paid is first returned to that estate."

Judge Sanborn's careful opinion contains all that need be said in support of this ruling. See, also, Kobusch v. Hand, 156 Fed. 660, 84 C. C. A. 372, Re Lyon, 121 Fed. 725, 58 C. C. A. 143, and Livingstone v. Heineman, 120 Fed. 786, 57 C. C. A. 154.

This being so, it seems to be clear that, when the title to the twine in question was formally transferred by the bankrupts to the rug company on November 7th, the effect was precisely the same as if the bankrupts had paid money to the rug company in order to indemnify it against liability upon the note. The fact that the bankrupts gave money's worth instead of money itself is not important. If the twine had been delivered to the claimant, the trustee could have recovered it by an appropriate action on the ground that the transaction was a

...oidable preference, and he was therefore justified in refusing to deliver the goods after the adjudication.

The doctrine of York Manfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 181, 50 L. Ed. 782, that the trustee ordinarily takes no better title to the property than the bankrupt himself had, does not apply. It may be true that the present transaction was good between the claimant and the bankrupt, but under the facts in proof the trustee's title is better than the bankrupt's, because the bankruptcy act declares the attempted transfer to be a voidable preference and expressly authorizes the trustee to disregard it.

The decision of the referee is affirmed.