## LAZARUS v. EAGEN.

(District Court, M. D. Pennsylvania. February Term, 1912.)

### No. 129.

**1. BANKRUPTCY (§ 100*)—PROOF OF INSOLVENCY—EFFECT OF ADJUDICATION.**

In case of an involuntary proceeding in bankruptcy, where insolvency is one of the issues, the adjudication is conclusive against all persons interested in the estate, or having had dealings with him, that the bankrupt was insolvent at the time of the commission of the act of bankruptcy alleged.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 66, 131, 141–144; Dec. Dig. § 100.*]

**2. BANKRUPTCY (§ 159*)—VOIDABLE PREFERENCES—"CREDITOR."**

An indorser of a note is a "creditor" of the maker within the meaning of Bankr. Act July 1, 1898, § 60b, c. 541, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), relating to voidable preferences to creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 247, 248, 262, 268–281; Dec. Dig. § 159.*

For other definitions, see Words and Phrases, vol. 2, pp. 1713–1727; vol. 8, pp. 7622, 7623.]

**3. BANKRUPTCY (§ 303*)—INTENTION OF PARTIES—PRESUMPTION.**

If a transfer of property by an insolvent to a creditor necessarily resulted in giving the latter a preference, it will be presumed that such was the intention of the parties.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. BANKRUPTCY (§ 303*)—VOIDABLE PREFERENCES—EVIDENCE CONSIDERED.

A sale of property by a bankrupt within four months prior to his bankruptcy, and while insolvent, to defendant, who was an indorser on his note to a bank, *held* under the evidence to have been made with an agreement or understanding that the bankrupt should pay the note from the proceeds, and to constitute a voidable preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.*]

In Equity. Suit by G. Fred Lazarus, trustee of William J. Greggs, bankrupt, against James Eagen. Decree for complainant.

D. A. Fell, of Wilkes-Barre, Pa., for complainant.
Abram Salsburg, of Wilkes-Barre, Pa.; for defendant.

WITMER, District Judge. A bill in equity was filed by the trustee in bankruptcy of the estate of William J. Greggs, to recover from James Eagen a preference. A creditors' petition was filed on the 7th of December, 1911, wherein was contained:

"That the said W. J. Gregg (or Greggs) owes debts to the amount of $1,000, or over, is insolvent, and is neither a wage-earner nor a person principally engaged in farming or the tilling of the soil. That within four (4) months preceding the filing of this petition, the said W. J. Gregg (or Greggs), while insolvent, committed an act of bankruptcy, in that he conveyed and transferred his real estate to his wife with intent to hinder, delay, and defraud his creditors. Second. That he transferred, while insolvent, a portion of his property to one of his creditors, with intent to prefer such creditor over his other creditors."

This petition with a subpœna, as provided by the Bankruptcy Act, as amended, was served personally upon the alleged bankrupt by Deputy Marshal H. J. Evans, and so returned by him, whereupon, in default of appearance and answer, he was December 28, 1911, duly adjudicated a bankrupt. After adjudication and the plaintiff's election, on refusal to surrender certain property conveyed by the bankrupt to the defendant within two months of the filing of the creditors' petition, the plaintiff brought this bill.

The bill contains the following allegations:

Third. "That prior to the 15th day of September, 1911, said W. J. Greggs was the owner in fee of two certain lots of land, coal and other minerals being excepted and reserved, the same being situate in the borough of Wyoming, Luzerne county, in said district, said lots being Nos. 20 and 22 in the William S. Shoemaker plot of lots in said borough, and being 104 feet in front and 144 feet along Eighth street to an alley, said 104 feet frontage being along Monument street, and being two corner lots, and all improved with a frame dwelling house; title to said two lots being vested in said William J. Greggs by deed of Ira R. Shoemaker et ux., on April 25, 1899, as will more fully appear by reference to the record of said deed in the recorder of deeds office in said county of Luzerne in Deed Book 385, at page 508," etc.

Fourth. "That on said 15th day of September, 1911, said bankrupt, W. J. Greggs, then owing and being indebted to the creditors named in the schedules filed to No. 2,027 in Bankruptcy (creditors whose claims are unsecured, A—3), executed and conveyed to Tillie A. Greggs, wife of said bankrupt (she, the said wife, joining in said deed of conveyance to herself), all of said two lots of land improved as aforesaid, situate in the borough of Wyoming, said district, for the nominal consideration of one ($1.00) dollar, which said deed was recorded in Deed Book No. 479 at page 301 of said recorder's office of Luzerne county."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Fifth. "That on the 13th day of October, 1911, said William J. Greggs, then owing all creditors whose claims are marked unsecured schedule A—3, and without any notice to said creditors, in violation of the act of March 28, 1905 (P. L. 62), sold and transferred a large part of his property, consisting of a sausage mill and fixtures and machinery thereunto belonging, as well, also, as wagons and horses, to Edward Berkowitz, for the cash payment of $1,300, which moneys said William J. Greggs received from his said purchaser, and three days thereafter, viz., October 16, 1911, said W. J. Greggs, then owing all of the creditors whose claims are marked unsecured in schedule A—3, No. 2,027 in Bankruptcy, in conjunction with his wife, Tillie A. Greggs, who by virtue of her deed from her said husband was the apparent owner of record of said lots of land, sold and conveyed by deed in fee simple said two lots of land, previously conveyed, as aforesaid, to said wife, unto one James Eagen of the borough of Wyoming, said district, for the cash consideration of $2,000, subject nevertheless to the lien of a certain mortgage executed by said Greggs, the bankrupt, to one Andrew J. Crouse, for a debt of $2,000 of record in Mortgage Book No. 171, page 492, etc., of said recorder's office of Luzerne county, which deed to him, the said James Eagen, was duly recorded October 16, 1911, by the bankrupt, William J. Greggs, as recorded in Deed Book No. 472, at page 530, etc., of said recorder's office of said Luzerne county. That on the 16th day of October, 1911, said William J. Greggs was indebted to said James Eagen on a promissory bank note payable three months after date at the First National Bank of Wyoming, Pa., for the amount or sum of $500, which said note was paid at said bank on October 18, 1911, and was marked by indorsement as follows 'James Eagen.' "

Sixth. "That by the transfer it was intended to create, and did actually create, a 'preference' within the meaning of the Bankruptcy Act of 1898, he, the said James Eagen, receiving from him, the said William J. Greggs, the sum of five hundred ($500.00) dollars, which said note was paid at said bank on October 18, 1911 (and marked by indorsement, as aforesaid, as follows: 'James Eagen'), to liquidate and pay said note held by said Eagen against said Greggs, at the time of said conveyance by the bankrupt, William J. Greggs, to James Eagen, or about the time of said conveyance receiving said moneys to liquidate said debt; and at the time of said transfer, he, the said James Eagen, had reasonable cause to believe that by said conveyance a preference would be given him, the said James Eagen, over the other numerous creditors of William J. Greggs, bankrupt."

The respondent's answer admits the facts contained in the third paragraph, without denying or affirming the fourth requires proof, disclaiming knowledge of the fifth, and denies the sixth. He furthermore declares said sale and conveyance to have been made bona fide, denying any knowledge on his part that either Greggs or his wife were insolvent at the time of such transfer; that he had no reason to believe that such sale was intended as a preference; that in fact it was no preference, he having been but accommodation indorser for Greggs at the bank to which the note was paid by him without his intervention.

The case having been referred to the referee as special master to take the testimony and make report thereof to court, together with his findings of fact and law, he reported the facts favorable to the defendant, primarily because it was not made to appear that Greggs was insolvent at the date of the transfers.

The learned master says that undoubtedly W. J. Greggs was in financial difficulty at the time he disposed of his property to his wife, and later, when they jointly conveyed the same property to James Eagen, yet he holds that the evidence is not sufficient to hold such difficulties were sufficient to constitute insolvency.

[1] While it is true, as argued, the filing of a petition and adjudication in bankruptcy does not generally establish the insolvency of the bankrupt at any date prior to such filing, it is equally certain that in the case of an involuntary proceeding, where insolvency is one of the issues, the bankrupt by the adjudication is conclusively proven to have been insolvent at the time of the commission of the act of bankruptcy. It is unnecessary to attempt to reconcile the opinion of the learned judge. In re Chappell (D. C.) 7 Am. Bankr. Rep. 608, 113 Fed. 545. It, however, also in my opinion holds this to be the doctrine.

Loveland's Bankruptcy, 558, gathering the concensus of opinion, states the law with approval that:

"The mere fact that a debtor is adjudged a bankrupt raises no presumption of insolvency prior to the filing of the petition. But when the question of insolvency is adjudged in determining the act of bankruptcy in an involuntary proceeding, the fact of insolvency at the date the act was committed may be taken by the adjudication."

The decree of this court put in evidence, adjudicating on the 28th of December, 1911, W. J. Greggs a bankrupt, conclusively established the fact at issue, as alleged in the petition, that Greggs was insolvent when he transferred his property to his wife, and afterwards to Eagen. Any other holding would lead to endless confusion in the administration of the law, and would in many cases nullify one of the principal purposes of the Bankruptcy Act, as was said in De Graff v. Lang, 92 App. Div. 564, 87 N. Y. Supp. 78. And it matters not that Eagen was actually without notice of these proceedings. An adjudication being an adjudication in rem, all persons interested in the res are regarded as parties to the bankruptcy proceedings. Among such parties are, not only the trustee, but all creditors, including lienors. Chapman v. Brewer, 114 U. S. 169, 5 Sup. Ct. 799, 29 L. Ed. 83; Carter v. Hobbs (D. C.) 1 Am. Bankr. Rep. 215, 92 Fed. 594; In re Ulfelder Clothing Co. (D. C.) 3 Am. Bankr. Rep. 425, 98 Fed. 409.

[2] There is furthermore no doubt that at the time of the transfer Greggs was Eagen's creditor by reason of the indorsement of the note at bank. That an indorser or surety on a note may be a creditor within the meaning of the bankruptcy law has been held in a long line of cases. In re Bailey & Son (D. C.) 21 Am. Bankr. Rep. 911, 166 Fed. 982; Stern v. Paper (D. C.) 25 Am. Bankr. Rep. 451, 183 Fed. 228; In re Sanderson (D. C.) 17 Am. Bankr. Rep. 871, 149 Fed. 273. Eagen having permitted or induced payment of the note, thereby intending to relieve himself from payment of all or a portion of it, to that extent was benefited, and constituted him a creditor. He was given a preference over other creditors of his class by reason of such transfer and the payment of his debt within four months of the bankruptcy of Greggs.

[3] If Eagen had reasonable cause to believe that such transfer would result in his preference, or to enable him to obtain a greater percentage of his debt than any other of the creditors of the same class of the bankrupt, Greggs, it is voidable at the instance of the

trustee. It is the result of the transaction that is to be regarded in determining the reasonableness of a preference, since equality between creditors is necessarily the ultimate aim of the law. The parties concerned must be held to have intended the necessary consequences of their acts; the bankrupt to give and the defendant to receive the preference which the conveyance of the property accomplished. If the bankrupt even intended treating Eagen like his other creditors, without giving him advantage over them, and such was, however, not the inevitable effect of their dealings, it will be presumed to have been otherwise intended.

[4] The testimony shows that Eagen was the indorser for Greggs on the Wyoming bank note of $500, which was carried along for possibly a year, having been renewed several times; meantime he was advised by a person in the bank that Greggs was slow pay, and of doubtful standing financially; he also had learned of Greggs' assignment or transfer of his real estate to his wife for the nominal consideration of $1; whether he knew of Greggs' transfer of his personal property to Berkowitz, for which Greggs was arrested, is not shown, but, it is proven that Eagen attended the hearing a few days after the transfer to him by Greggs, and secured the recognizance of $1,000 for the latter's appearance at court. Eagen says that there was nothing said about paying the note when the transfer was made, but he admits that he knew that the note came due soon thereafter. However, when he was asked, "When you paid the $2,000, didn't you inquire at the bank within a day or two as to whether or not that note had been lifted and paid?" he answered, "I don't remember. I was told the day after—some time—Is that Gregg note paid? and they told me it was." Why did he go to the bank and inquire if the note had been paid and lifted, if he did not expect it to be paid then; and if to be paid then, is it not natural to presume it was understood that it should be paid out of the money supplied by him for the property obtained from the bankrupt? The admission to the deputy marshal who served him with the bill and subpœna is conclusive, however, and proves beyond doubt, as admitted by Eagen, that he bought the property to save himself because of having to make good for Greggs at bank. How could he save himself from loss if he paid a fair and full consideration for the property transferred, if it was not intended that his debt, or the note in bank, should not be paid out of the purchase price? The answer is inevitable, and I am satisfied from all that appears that a preference was effected, and that Eagen had reasonable cause to believe that such would result from the transfer to him of the property in suit.

I cannot excuse the conduct of Eagen because of the advice of counsel, representing as well the bankrupt. The facts necessary to disclose the bankrupt's true financial situation were within his own reach, and I cannot be made to believe that he, having lived across the street in a small town, knowing the bankrupt for many years, and a director of the bank in which he was indorser and kept his accounts, was ignorant of them. If he was, he remained so willingly, and the law will not let him profit.

Again, taking in account the manner in which the transfer was effected, the recording of the deed by Greggs, instructing the recorder not to publish, the purchase of the mortgage by Eagen, and the taking of an assignment therefor before any attempt whatever to retake the property, leaving the property in the possession of the Greggses without insurance, payment of taxes, or the exercise of any ownership over it but the production of receipts for a small rental on an oral lease, color the transaction with such additional doubt as in itself to call for the most satisfactory explanation. Eagen's testimony does not impress me as an attempt, on his part, to throw much light upon the transaction. His answers are evasive, and throughout it is a disclaimer of knowledge, which in many instances was within easy range. I am well satisfied that he had reasonable cause to believe that he was obtaining a preference over the other creditors of Greggs, and possibly assisting the latter in placing some of his property beyond reach.

The defendant, James Eagen, will be required to execute and deliver a deed of conveyance for the property transferred to him by the bankrupt, and surrender his deed to the plaintiff. A formal decree may be accordingly drawn.