## MILLER v. FISK TIRE CO.

(District Court, D. Minnesota, Fifth Division. March 2, 1926.)

**1. Bankruptcy ⟨key⟩159—"Voidable preference" arises on transfer of property, within four months preceding bankruptcy, to creditor having knowledge that preference will result (Bankruptcy Act, §§ 60a, 60b [Comp. St. § 9644]).**

Under Bankruptcy Act, §§ 60a, 60b (Comp. St. § 9644), a "voidable preference" arises when an insolvent person, within four months preceding bankruptcy, makes a transfer of property, effect of which is to enable transferee, a creditor with knowledge that a preference will result, to obtain a greater percentage of his debt than another creditor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Voidable.]

**2. Bankruptcy ⟨key⟩163.**

Preferential transfer need not be made directly to creditor.

**3. Bankruptcy ⟨key⟩164.**

Guarantor of bankrupt's account, to whom collections from sales had been paid, *held* a creditor from whom a preference could have been recovered.

**4. Bankruptcy ⟨key⟩164—That guarantor, making preferential payment from bankrupt's funds, was also a creditor, held not to preclude recovery from creditor receiving payments from guarantor.**

That guarantor, who paid bankrupt's account, was also a creditor from whom a preferential payment could have been recovered, *held* not to prevent recovery of payment from firm receiving it, if made with bankrupt's funds in manner to constitute a voidable preference.

**5. Bankruptcy ⟨key⟩165(2)—Guarantor's payment of bankrupt's account out of own funds held not a voidable preference, though his reimbursing himself from bankrupt's fund may have been.**

Where guarantor paid bankrupt's account out of his own funds, and then reimbursed himself in part out of bankrupt's funds in his hands, and recovered balance from bankrupt, *held*, guarantor's payment to creditor from his own funds, not depleting bankrupt estate, was not voidable preference, though his reimbursing himself from bankrupt's funds may have been.

**6. Bankruptcy ⟨key⟩165(2).**

There can be no preferential payment without depletion of bankrupt's estate.

**7. Bankruptcy ⟨key⟩303(1).**

Burden of proof of depletion of bankrupt's estate, essential to a voidable preference, is on trustee.

At Law. Action by Paul A. Miller, trustee in bankruptcy of Joseph B. Healy and Elmer J. Lindsay, doing business as the Hibbing Auto Supply Company, and as individuals, against the Fisk Tire Company. Judgment for defendant.

A. G. McKnight, of Duluth, Minn., for plaintiff.

M. T. O'Donnell, of Duluth, Minn., for defendant.

JOHN B. SANBORN, District Judge. At the close of the testimony the plaintiff and defendant each moved for a directed verdict, and thereupon the court discharged the jury and took the case under advisement. From the admissions contained in the pleadings and the evidence adduced, the court finds generally in favor of the defendant; that it is entitled to judgment that the plaintiff take nothing by this action and for its costs and disbursements. Let judgment be entered accordingly.

Memorandum.

Joseph B. Healy and Elmer J. Lindsay, who had been copartners doing business as the Hibbing Auto Supply Company, and who had been engaged in the automobile business at Hibbing, Minn., were adjudged bankrupt on the 8th day of July, 1923. Paul A. Miller was appointed trustee on the 24th day

of July, 1923, and he has brought this action to recover what he claims was a voidable preference.

The Hibbing Auto Supply Company, early in the spring of 1923, was evidently insolvent, but was doing business. The company it had been buying automobile tires from had refused to deal with it further. It had received orders for a number of tires. Healy took the matter up with Neumann, a representative of the defendant, a manufacturer of tires, but was told that none would be sold to the Hibbing Auto Supply Company, unless he could secure a guarantor of the account. He offered J. H. Ryan, a man of financial responsibility, who was accepted by the company, and who signed the following guaranty on the 9th day of April, 1923:

"I hereby guarantee, unconditionally, to the Fisk Tire Company, Inc., a New York corporation, the full and prompt payment at maturity of all invoices that it has now rendered or may hereafter render against Hibbing Auto Supply Company, my liability not to exceed $1,000, same to continue until further notice, for merchandise furnished or to be furnished, and all extensions, notes, and renewals given on account thereof, hereby waiving notice to me of the acceptance of this guaranty, and of delivery of all materials and waiving notice of default in payment, and, in the event of the failure of the said Hibbing Auto Supply Company to pay any such invoices, extensions, or notes when due and matured, acknowledge myself liable, and agree to pay same upon demand, as though the material had been purchased and invoiced to me for my own account; the guaranty being given for and in consideration of $1 and other valuable considerations, the receipt whereof is hereby acknowledged."

After this guaranty had been given, the defendant made several shipments of tires to the partnership, and received some payments on account. On the 6th day of June there was still due the defendant $1,147.15. On that day Neumann called at the Hibbing Auto Supply Company's place of business and found it had been closed by the sheriff. He called Healy on the telephone, and was told to go to Ryan, the guarantor. He went to Ryan, presented a statement of the account to him, and Ryan gave him a check payable to himself for $1,147.15, signed "Ryan Bros., by J. H. Ryan." Neumann testified that, when he called Healy prior to receiving this check, he asked him if he had made provision to settle the account; that Healy said, in substance, that he could get

a check from Ryan. On direct examination, Healy stated that, when Neumann called him, he said that Ryan had the money; that he had told him he had given the money to Ryan. On cross-examination, he said he had told Neumann that Ryan would take care of the account. Neumann denies that he knew that Ryan had funds of the partnership, or was so advised.

At the time that Ryan consented to guarantee the account of the partnership with the defendant, he had an understanding that collections received on account of sales of tires by the Hibbing Auto Supply Company were to be turned over to him. From time to time thereafter Healy did turn over to Ryan, upon that understanding, village warrants and cash. The warrants were turned over to Ryan on or before May 20th, and up to the time that Ryan made the payment to Neumann he had received from the partnership about $500 in warrants and $500 in cash. He has never returned the warrants or the cash, and he received in addition, after his check was given, $147.15 from Healy personally.

The plaintiff's contention is that Ryan was an intermediary, and that the money which he paid to Neumann on the 6th day of June, by his check, was the money of the partnership, and not the money of Ryan, and that the Fisk Tire Company had reasonable cause to believe that the payment by Ryan to it would effect a preference. The defendant takes the position that the village warrants and money transferred to Ryan by the partnership were transferred to him to protect him upon his guaranty; that the defendant did not know of the arrangement existing between the partnership and Ryan, and did not know and did not have cause to believe that it was being paid by Ryan moneys belonging to the partnership, or that the payment to it by Ryan of its account would effect a preference.

The Bankruptcy Act, in section 60a, provides: "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." Comp. St. § 9644. Section 60b provides that such a transfer shall

be voidable if "the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference." [1, 2] So far as we are concerned here, a voidable preference exists when a person, while insolvent and within four months of bankruptcy, makes a transfer of his property, the effect of which is to enable one creditor to obtain a greater percentage of his debt than another creditor of the same class, in case such transferee has reasonable cause to believe that the transfer will result in a preference. Collier on Bankruptcy (13th Ed.) vol. 2, p. 1248.

The payment to the defendant's representative was made while the partnership was insolvent, and the evidence indicates that the defendant had reasonable cause to believe that it was. It was made within four months of bankruptcy. If Ryan, the guarantor of the account, was an intermediary, and the partnership was attempting to do, through Ryan, what it could not itself do in the way of preferring the defendant, and the defendant had reasonable cause to so believe, then this payment of June 6th was a voidable preference. Collier on Bankruptcy (13th Ed.) vol. 2, p. 1267.

"To constitute a preference, it is not necessary that the transfer be made directly to the creditor. It may be made to another for his benefit. If the bankrupt has made a transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it." Newport Bank v. Herkimer Bank, 32 S. Ct. 633, 225 U. S. 178, 56 L. Ed. 1042; Grandison Trustee v. National Bank of Rochester, 231 F. 800, 145 C. C. A. 620; Hackney v. Raymond Bros. Clarke Co., 94 N. W. 822, 99 N. W. 675, 68 Neb. 624; First National Bank of Scottdale v. A. W. Blackburn, 256 F. 527, 167 C. C. A. 599, 43 Am. Bankr. Rep. 680.

[3] The facts here establish that Ryan, being a guarantor, was a creditor from whom a preference could be recovered. Swarts v. Siegel, 117 F. 13, 54 C. C. A. 399; Livingstone v. Heineman, 120 F. 786, 57 C. C. A. 154; In re Sanderson (D. C.) 149 F. 273; In re Christopher Bailey & Son (D. C.) 166 F. 982; Paper v. Stern, 198 F. 642, 117 C. C. A. 346; Kobusch v. Hand, 156 F. 660, 84 C. C. A. 372, 18 L. R. A. (N. S.) 660; Huttig Mfg. Co. v. Edwards, 160 F. 619, 87 C. C. A. 521; Lazarus v. Eagen (D.

C.) 206 F. 518; Walker v. Wilkinson (C. C. A.) 3 F.(2d) 867; In re Star Spring Bed Co. (C. C. A.) 265 F. 133; Bartholow v. Bean, 18 Wall. (85 U. S.) 635, 2 L. Ed. 866.

[4] The fact that recovery could be had against Ryan does not, however, necessarily preclude a recovery from the defendant. In the case of In re Sanderson, supra, it was said: "It is the opinion of the court that the words 'such person' refer either to the person receiving such preference or the person who is benefited thereby. If the party receiving such preference is without the jurisdiction of this court, and the person benefited thereby is within the jurisdiction of the court, the trustee may proceed against the latter." If the village warrants and money were turned over to Ryan, to be transferred to the defendant, for the purpose of relieving Ryan of his obligation as guarantor, and if this was known to the defendant, recovery might be had from either Ryan or the defendant.

[5] The evidence, however, indicates that the partnership had agreed to protect Ryan by giving to him the village warrants and moneys; that Ryan, because of his guaranty, paid the entire account of the defendant, and thereupon reimbursed himself to the extent of $1,000 out of moneys and property left with him by the partnership, and collected the balance from Healy personally; that the estate of the bankrupt was not diminished by the payment made to the defendant, but was diminished by Ryan's reimbursing himself from the partnership property deposited with him as security. If Ryan had received from the partnership no money or village warrants up to the time he paid the account, but had subsequently been reimbursed by the partnership, it could not be claimed that the defendant had received a voidable preference. So far as the evidence shows, the payment by Ryan to Neumann was made with his own funds and satisfied his obligation as guarantor. Therefore Ryan apparently has an absolute defense against a claim upon his contract of guaranty.

This case is governed by the same rule of law that was applied in Newport Bank v. Herkimer Bank, supra. The Newport Knitting Company gave to the Herkimer Bank a three-months note, indorsed by the Titus Sheard Company and secured by the delivery to the bank of assignments of the bills receivable of the latter company amounting to $6,300. Before the maturity of the note the Titus Sheard Company paid to the bank

the amount of it, less accrued interest, and took up the note and the collateral. The payment was made by the Titus Sheard Company, acting in its own behalf, by a check drawn against funds to its credit in the bank. The amount it paid was then charged by it to the Newport Knitting Company, to which it was indebted on open account in a larger sum than the amount of the note. This offset was not shown to have been known to the bank.

The trustee in bankruptcy of the Newport Knitting Company claimed that "'the bankrupt parted with property to the amount of the note and the bank received it and was benefited to that amount,' to the detriment of the other creditors of the Newport Knitting Company, then insolvent, or, as the District Court put it, that 'a short cut was taken by common consent and the check was passed to the bank and the amount charged to the knitting company so that it in fact paid the note.'"

The court said: "Here the payment to the bank did not proceed from the bankrupt, the Newport Knitting Company. The Titus Sheard Company had a standing quite apart from its relation to the Newport Knitting Company as a debtor in the account. In the transaction with the bank, the Titus Sheard Company acted on its own behalf. As the holder of the original note, that company had indorsed it to the bank, taking for its own benefit the proceeds of the discount. Its obligation as indorser was continued by the renewals, and to secure the bank on the last renewal it had deposited its own collateral. It took up the note with its own funds and received back the security. Neither directly nor indirectly was this payment to the bank made by the Newport Knitting Company, and the property of that company was not thereby depleted."

The final conclusion of the court was that "the bank dealt with the Titus Sheard Company as the indorser of the paper, and the trustee failed to establish any right to recover the moneys it received." See, also, Continental Trust Co. v. Chicago Title Co., 33 S. Ct. 829, 229 U. S. 435, 57 L. Ed. 1268; Horstman v. Little, 90 S. W. 1095, 99 Tex. 530; Reber v. Shulman, 183 F. 564, 106 C. C. A. 110.

[6] There can be no preferential transfer without a depletion of the bankrupt's estate. Collier on Bankruptcy (13th Ed.) vol. 2, p. 1276; 7 C. J. 164.

[7] The burden of showing that the bankrupt's estate was diminished by the payment to the defendant was upon the trustee.

Lowell v. Brown (D. C.) 280 F. 193. The evidence shows that Ryan had property and funds of the partnership in his possession when he gave the check to the defendant, but fails to show that the check was paid out of such funds, or that the estate was diminished by the payment to the defendant.