**ANDERSON v. DATER et al.**

District Court, W. D. Michigan, S. D. September 28, 1926.

1. **Bankruptcy ⟠165(1)—Transfer of land contract by bankrupt to creditors held to constitute voidable "preference."**

A transfer by bankrupt within four months prior to bankruptcy, and when insolvent, by the surrender of a contract for purchase of land, on which he had made payments, to the vendor, under an agreement between bankrupt, the vendor, and two other creditors that it should be accepted in full payment of his debts to them, *held* to effect a voidable preference; it being shown that bankrupt's equity in the land was of substantial value.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Preference.]

2. **Bankruptcy ⟠159—Transfer to indemnify surety or guarantor may be preference (Bankruptcy Act, § 60b [Comp. St. § 9644]).**

A transfer to indemnify an indorser or guarantor may constitute a preference, within the meaning of Bankruptcy Act, § 60b (Comp. St. § 9644).

3. **Bankruptcy ⟠168—Transfer of property held voidable as preference only as to part of its value.**

Where the indorser of a note of bankrupt was secured by assignment of a land contract made four years prior to bankruptcy, and when bankrupt was solvent, a transfer of the contract to the indorser within the four months period, when he was insolvent in consideration of payment of the note, *held* to effect a voidable preference only to the extent that the value of the property transferred exceeded the amount due on the note.

4. **Equity ⟠72(1)—Delay, to be laches, must be prejudicial.**

Delay in bringing suit to constitute laches which will bar recovery, must have operated to the prejudice of defendants.

In Equity. Suit by Charles E. Anderson, trustee in bankruptcy of William M. Traver, against George R. Dater and others. Decree for complainant.

R. J. Cleland and E. J. Bowman, both of Grand Rapids, Mich., for petitioner.

Gore & Harvey, of Benton Harbor, Mich., for defendants.

RAYMOND, District Judge. The essential facts in this case are not in dispute. The controversy is directed principally to the legal effect of the various transactions involved. It appears from the evidence that on September 5, 1917, Eleanor G. Gray entered into a land contract with the bankrupt, William M. Traver, whereby she agreed to convey to him 560 acres of land in Van Buren county, Mich., known as the Olney farm, for the sum of $43,000. The total purchase

price was $53,000, $10,000 having been paid in cash prior to the execution of the contract. Traver went into possession of the farm, and continued in possession until the latter part of March, 1922. During this period he made valuable improvements upon the farm, and paid further sums upon the contract aggregating about $15,000.

On March 29, 1918, Traver and his wife assigned the contract to defendant Humphrey S. Gray, and at the same time delivered to him other securities. Contemporaneously therewith Traver entered into a contract with Humphrey S. Gray containing the following provisions:

"It is agreed that all these mortgages and transfers are given to second party to secure any and all indebtedness first party may at any time, until such papers are canceled, directly or indirectly owe Humphrey S. Gray, or the American National Bank of Benton Harbor, Mich., also to secure said Humphrey S. Gray for any indorsement upon, or security given for any indorsement upon, or security given for any indebtedness, of the said first party to said bank; it being also agreed that if first party pays the indebtedness he owes or may, while these papers remain in force, owe said Humphrey S. Gray, and which he owes or may owe the American National Bank, then all of the above mortgages and transfers shall be canceled and returned to first party, but if at any time first party fails to pay any indebtedness he owes to said H. S. Gray and to said American National Bank, or any indebtedness for which the said H. S. Gray is security or indorser, or has given collateral, then second party may foreclose said mortgages or sell said contract and apply the net proceeds, first, on any and all indebtedness due said H. S. Gray, directly or indirectly, and to secure any indorsement made by him or collateral given by him to secure payment of any debt of W. M. Traver, and then on any and all indebtedness due from said first party to said bank and the balance if any, shall be returned to first party."

In November, 1921, Traver, whose business interests consisted largely of the operation of canning factories and the farm lands here in question, became financially embarrassed, and on November 17 his attorneys called a meeting of his creditors, to be held November 22 of that year. The notice to creditors stated that his total indebtedness was in excess of $150,000, and that his ready assets were not of great value. At this meeting defendant George R. Dater was elected trustee for creditors, and shortly thereafter

he sent a statement to creditors containing the following information relative to the assets:

"Real Estate.—Olney Farm, consisting of 560 acres, was purchased by Mr. Traver in the year 1917 from Eleanor Gray, of Benton Harbor, Michigan. The purchase price was $53,000. A payment of $10,000 was made on the purchase price, and a land contract executed to cover the balance of $43,000. A further payment of $8,000 has been made, and there is now owing a balance of $35,000, with interest for one year at 7 per cent. After this contract was executed, Mr. Traver assigned same to secure any indebtedness which he might owe the American National Bank at Benton Harbor, Mich. The following loans were procured at this bank:

| | |
|---|---:|
| Note indorsed by H. S. Gray, as surety | $10,000.00 |
| Note indorsed by George R. Dater, as surety | 11,500.00 |
| Note indorsed by J. M. Paver Company | 5,000.00 |
| Note indorsed by Claire Clover | 950.00 |
| Total indebtedness due American National Bank at this time | $27,450.00 |

There is six months' interest accrued. The farm is conservatively estimated at a value of $85,000. From our investigation we have reason to believe that the value of the equity of Mr. Traver in this farm, over and above the items aforesaid, is about $20,000. In the spring of 1920 Mr. Traver began the construction of a canning plant at Breedsville, Mich. He has invested in this plant above $20,000."

At the time the creditors' meeting was held, the default in payments on the land contract amounted to about $6,500. Defendant Humphrey S. Gray, on November 22, 1921, served on Traver and his wife a notice, signed by himself and Eleanor G. Gray, declaring the land contract to be in default, and notifying them of election to terminate the contract and to declare the same void on account of such default after the expiration of 20 days.

December 3, 1921, an additional payment of $1,700 having become due upon the contract, a similar notice was served by Mr. Gray upon Traver and his wife, and also upon George R. Dater as trustee. At that time there was a discussion between Mr. Gray and Mr. and Mrs. Traver, the substance of which is stated by Mr. Gray as follows:

"Mr. Traver said that, if the trusteeship had gone through, he thought he could have saved himself, but now that he couldn't; he couldn't hold the farm, there was no use of

trying, and that he and his wife would surrender their contract to me and consider the thing closed, just consider the transaction closed; that inasmuch as I had their copy of the contract it wasn't—they had nothing to deliver—and we talked about the cattle that was on the farm, and I agreed with him that the boy might stay there on the farm and take care of the cattle, and feed some of his hay and straw, whatever there was there, until spring. I agreed this, and I told him that I wouldn't file any claim against the estate for the $11,500 I had indorsed under the contract, and that I was satisfied Mr. Dater would not file for the $10,000 he had indorsed; that we would consider those two paid, and neither one of us would file against his estate, and I took the contract back."

At the time of this conversation it was known that the creditors had refused to join in Mr. Dater's trusteeship and that the trust arrangement had failed. January 4, 1922, a further notice, signed by Eleanor G. Gray and H. S. Gray, was served upon Mr. and Mrs. Traver and George R. Dater, trustee, that the contract in question was terminated, and also informing them that they might continue in possession from day to day until further notice. On the following day defendant Eleanor G. Gray executed a warranty deed of the premises to George R. Dater and Humphrey S. Gray; the deed being recorded February 9, 1923.

February 6, 1922, an involuntary petition in bankruptcy was filed against William M. Traver, and adjudication followed shortly. March 7, 1922, defendant Dater was appointed receiver in bankruptcy, and acted in that capacity until March 27, 1922, on which date plaintiff was elected trustee. January 30, 1923, defendants Dater and Gray executed a conveyance of the premises here in question to George and Jacob Friday.

It appears from undisputed evidence in the case that on January 1, 1922, the balance due from William M. Traver to Eleanor G. Gray upon the land contract in question was $39,778.40, that the amount due the American National Bank on account of notes indorsed by George R. Dater was $10,192.50, and that the amount due the American National Bank upon notes indorsed by Humphrey S. Gray was $11,955. No claims for these obligations have been filed in the bankruptcy proceedings. The claim of the defendants George R. Dater, Eleanor G. Gray, and Humphrey S. Gray, with reference to the transactions in question, is set forth in paragraph 16 of the answer as follows:

"Further answering said bill of complaint, these defendants aver that said William M. Traver never invested but little of his own money in the purchase of said lands and premises; that said William M. Traver borrowed large sums of money from the defendants, or certain of them, from time to time, and to secure the payment thereof he transferred and turned over to the defendants, or certain of them, the said land contract; that in the year 1921 the said William M. Traver fully realized that the amount he was owing the defendants on said contract and on account of loans was even more than the value of said farm, and that said William M. Traver knew that he had no right, title, and interest in said lands and premises; that when said William M. Traver found himself in financial difficulty in the month of November, 1921, he came to a full settlement with these defendants, and surrendered the possession of said farm to these defendants, with the understanding that same should be accepted in payment and satisfaction of the partial [amount] owing on said contract and the indebtedness owing these defendants by Wm. M. Traver; and defendants now aver that the value of said farm in the year 1922 was not greater than the amount that was owing by said William M. Traver to these defendants; that the surrender of the possession of said lands and premises and the surrender of all right, title, and interest of said William M. Traver under said land contract, to these defendants, was not in any manner a fault [fraud] upon the other creditors of said William M. Traver, and would not deprive the plaintiff or the said creditors of any property right."

The purpose of the bill of complaint filed by the trustee in bankruptcy is stated therein as follows: "That this suit is brought to set aside certain transfers thereof as preferential payments to creditors of said William M. Traver, bankrupt, and to recover payments of money transferred in fraud of the creditors of said William M. Traver, bankrupt, and for the purpose of having an accounting with said defendants as hereinafter stated, and which transfers plaintiff alleges any creditors of said bankrupt might have avoided."

[1] Among the prayers for relief is one that the defendants George R. Dater, Humphrey S. Gray, and Eleanor G. Gray be required to account to plaintiff for the value of the interest of William M. Traver, bankrupt, in the real estate described in the land contract. Under section 60b of the bankruptcy Act (Comp. St. § 9644) relative to

preferential transfers, a trustee in bankruptcy has the option to "recover the property or its value." The option of suing for the property or its value rests with the trustee. The present bill of complaint prays for both classes of relief. In view of the fact that the property was on January 30, 1923, prior to the commencement of this suit, transferred to third parties who are not made parties to this suit the transfer cannot be set aside. This relief must therefore be denied.

In view of this conclusion, it is apparent that the prayer of the plaintiff's bill, which asks for an accounting for the value of crops upon the premises, during the season of 1922 and subsequent to the transfer of the Olney farm, must be denied, for the reason that this suit, considered as one for the recovery of the value of the property transferred, ratifies the title which passed through the alleged preference, and recovery is limited to the value of the property so transferred. Plaintiff's prayer for such relief will therefore be denied. Inasmuch as the liability of defendant Simpson Acres, Incorporated, is asserted only on this theory, the bill of complaint will be dismissed as to this defendant.

Plaintiff also seeks an accounting in this suit with defendant Dater for property received by him while acting as voluntary trustee and as receiver in bankruptcy. The principal item claimed upon this branch of the case is the sum of $1,074.87, paid in January, 1922, by defendant Dater, while acting as trustee for William Traver, for taxes assessed for the year 1921 upon the Olney farm. It appears that on or about April 20, 1922, this defendant made his final report and account to the referee in bankruptcy, both as receiver and trustee. No hearing has been had upon the account. This account and report should be passed upon by the referee in bankruptcy, and may more properly be brought to the attention of this court by petition for review after determination by the referee. There appears to be no good reason why this subject-matter should be submitted to the court by original bill for accounting, while the same issues are pending before the referee. This relief will therefore be denied, without prejudice to the right of the trustee to file proper objections in the proceedings before the referee.

A more serious question presents itself in connection with the prayer for relief based upon the theory that the transfer of bankrupt's equity in the farm premises to defendants George R. Dater, Eleanor G. Gray, and Humphrey S. Gray in the month of December, 1921, or January, 1922, constituted a preferential transfer, and that plaintiff is entitled to recover the reasonable value of such equity. Paragraph 16 of the answer of George R. Dater, Eleanor G. Gray, and Humphrey S. Gray (above quoted) must be accepted as conclusive of the fact (also fully established by the evidence) that bankrupt transferred his equity in the farm to defendants in December, 1921, or January, 1922, "with the understanding that same should be accepted in payment and satisfaction of the amount owing on said contract, and the indebtedness owing these defendants by William M. Traver."

The value of this equity is in dispute, but that it then had a substantial value is apparent from the estimated value of the farm as stated in the report to creditors by Dater (therein said to be a conservative estimate), viz. $85,000, and the estimated value of the equity at $20,000, as therein stated. This equity was appraised at $16,000 by three disinterested appraisers appointed in the bankruptcy proceedings in March, 1922. The value of this equity was stated as $20,000 in the schedules filed on behalf of bankrupt on March 15, 1922. Various witnesses estimated the value of the farm about the time of the transfer at $70,000 to $84,000. The farm was sold by defendants in January, 1923, at a price which cleared all indebtedness to defendants and the $950 note indorsed by Clover, the total of which must have been considerably in excess of $65,000.

There can be no escape from the conclusion that these defendants were aware at the time of these transactions, not only of Traver's insolvent condition, but that the attempted plan to place Traver's property in the hands of a voluntary trustee had failed, and that bankruptcy was imminent. By receiving this transfer within four months of bankruptcy, defendants obtained full satisfaction of their claims. It appears to the court that the essential elements of a preference, as defined in the Bankruptcy Act, were present. The fact that the transfer was effected indirectly by means of a surrender of all rights of bankrupt to the vendor in the contract, who soon thereafter made conveyance to defendants George R. Dater and Humphrey S. Gray, does not affect this result. See Miller v. Fisk Tire Co. (D. C.) 11 F.(2d) 301.

[2] It is well settled that a transfer to indemnify a surety or a guarantor may constitute a preference, such parties being recognized as "creditors" of the bankrupt within the meaning of section 60b of the Bankruptcy

Act relating to voidable preferences to creditors. Lazarus v. Eagen (D. C.) 206 F. 518; Miller v. Fisk Tire Co. (D. C.) 11 F.(2d) 301; McCarron v. Aronson (D. C.) 1 F.(2d) 455; Remington on Bankruptcy, § 1670; Collier on Bankruptcy, p. 1291.

[3] No preference, however, exists as to that portion of the transfer which is represented by the balance unpaid to the vendor on the contract, viz. $39,778.40, nor (under the rule stated in the case of In re Sayed [D. C.] 185 F. 962) as to the amount due on notes owing the American National Bank indorsed by Humphrey S. Gray, viz. $11,955. The assignment of land contract to protect this indorsement was made nearly four years prior to bankruptcy and at a time when bankrupt was presumably solvent.

It is the opinion of the court, after careful consideration of the contract of March 29, 1918, and the evidence of Humphrey S. Gray relative thereto, that it cannot be construed as security for the indorsement of George R. Dater, nor for loans made by the Bank on notes secured by the indorsement of others than Humphrey S. Gray. While it has been held that security upon real estate given to an indorser of notes to a national bank may inure to the bank (see First National Bank v. Haire, 36 Iowa, 443; Magoffin v. Boyle National Bank [Ky.] 69 S. W. 702), no principle of law suggests itself upon which all other indorsers of notes given to the bank by the same maker may invoke the same privilege. The evidence given by Mr. Gray relative to the assignment of land contract indicates clearly that, while he was at the time the president of the bank, this transaction was in no sense conducted in his official capacity. It was purely personal, and his relations with the bank were the same as those of an indorser not financially interested in the bank from which a loan is obtained.

[4] The suggestion of counsel for defendants that plaintiff has been guilty of laches, and that because of inaction for several years he is estopped from bringing this action, is without merit, for the reason that there is no evidence that defendants have at any time been misled to their injury by the inaction or delay.

The determination of the fair market value of the Olney farm lands is a matter of much difficulty. Estimates of value by expert witnesses vary greatly. The property is not readily marketable, and it appears from the evidence that defendants, after considerable effort, were able to dispose of it only by making an exchange. It is the conclusion

of the court that the fair market value at the time of the preferential transfer was $65,000. Deducting therefrom the sum of $39,778.40 and $11,955, as to which no preference can be asserted, leaves a balance of $13,266.60. Plaintiff may therefore recover from defendants George R. Dater, Humphrey S. Gray, and Eleanor G. Gray a sum not exceeding in the aggregate $13,266.60, with interest at 5 per cent. from January 30, 1923, the date on which defendants transferred the equity. See Ommen v. Talcott (D. C.) 175 F. 259, 268.

A decree may be submitted for settlement pursuant to this opinion, but not until an amendment to the bill of complaint herein shall have been filed, containing averment of facts upon which the prayer for relief by way of recovery of value of the Olney farm as a preferential transfer, may properly be granted. This amendment is granted pursuant to equity rule No. 19.